

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-26-1995

# United States v Salemo

Precedential or Non-Precedential:

Docket 94-1361

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States v Salemo" (1995). *1995 Decisions.* Paper 199.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/199

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

3551

58102

109153

160204

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 94-1361 & 94-1438


UNITED STATES OF AMERICA
v.

GEORGE P. SALEMO,
                              Appellant


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Crim. No. 92-cr-00547


Argued:  May 2, 1995

Before:  SLOVITER, Chief Judge, ALITO and MCKEE, Circuit Judges.

(Filed July 26, 1995)


OPINION OF THE COURT


GEORGE P. SALEMO, *Pro Se*
No. 22891-008 YUMA
37910 N. 45th Avenue
Phoenix, AZ  85027-7055

STEVEN A. MORLEY, ESQUIRE (ARGUED)
834 Chestnut Street, Suite 206
Philadelphia, PA  19107            _____
    Attorney for Appellant


1

WALTER S. BATTY, JR., ESQUIRE
Asst. United States Attorney
EMILY MCKILLIP, ESQUIRE (ARGUED)
Asst. United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106-4476
        <u>Attorneys for Appellee</u>

McKEE, <u>Circuit Judge</u>

George Salemo brings this appeal after being sentenced for a crime commonly known as "check kiting."[1]  Although he challenges his sentence on numerous grounds, we need only address his claim that he was denied his Sixth Amendment right to counsel at sentencing. Because we find this assertion to have merit we will remand for resentencing.

**I.**

On September 24, 1992, a federal grand jury returned a two-count indictment charging Salemo with bank fraud in violation of 18 U.S.C. § 1344.  Prior to trial, the public defender who had been appointed to represent Salemo was allowed to withdraw, and the district court then appointed an attorney of Salemo's own choosing to represent Salemo at trial. After a two day trial, the jury convicted Salemo of both counts.

Sentencing was originally set for January 10, 1994, however, on three separate occasions, Salemo moved *pro se* for a continuance of the sentencing date and the district court granted each request.  On March 1, 1994, Salemo wrote to his trial attorney and asked him to withdraw as counsel.  Salemo also wrote

_____

[1]Salemo raises a plethora of issues regarding his trial.  He complains that the indictment was duplicitous and inadequately charged him with bank fraud; that the government failed to disclose exculpatory information; that the trial court improperly excluded evidence; that the trial court's jury instruction on constructive control was misleading and that a misstatement of certain facts by the court created a risk of an unjust verdict; and, that his sentence in this case violates the double jeopardy provision of the Fifth Amendment.  We find these contentions to be without merit.

to the district court and requested new counsel and yet another postponement of the sentencing. He stated that given his request for a change of counsel, he needed the continuance in order to have an opportunity to meet with an attorney and adequately prepare for sentencing. The sentencing hearing finally proceeded on April 4, 1994. At the beginning of that hearing the following discussion occurred between the district judge, Salemo's appointed counsel and Salemo:

THE COURT: We're ready for the sentence of Mr. Salemo, but I understand that there are some preliminary matters which we need to deal with.

The first is Mr. Salemo may not wish to have you, [trial counsel]. I don't know.

[TRIAL COUNSEL]: I'm perfectly aware of that, Your Honor. We have talked at length about it.

THE COURT: Do you wish to remain with him at counsel table or does he wish for you to step back and remain available as a standby counsel?

[TRIAL COUNSEL]: I will tell the Court what I told Mr. Salemo on several occasions. I will not withdraw voluntarily. If he does not want me seated here, I shall step back. . . .

THE COURT: Mr. Salemo, do you wish to state anything in regard to [trial counsel]?

THE DEFENDANT: Yes, Your Honor. As far as the sentencing today, again, I'm going to reiterate my request that it be continued.

THE COURT: Well, first we have to determine -- we're not there yet. We're going to deal with that.

THE DEFENDANT: All right. No, I had, as of March 1st, I wrote [my attorney] the letter that I've submitted to the Court, which I don't know if you received it in the mail on Friday --

THE COURT: Yes.

4

THE DEFENDANT:  -- and I had asked him to withdraw.  He came and saw me at Fairton and we spent about ten, fifteen minutes together and I was under the understanding that he was going to withdraw.  I guess we had a misunderstanding that he was going to wait and see what the Court said. . . .

We have not discussed the pre-sentence at all, I mean not in the slightest, and we haven't discussed the sentencing problems at all.  Therefore, if we went ahead with the sentencing, I would have to represent myself.  [Trial counsel] is not prepared to do that based -- and I filed an awful lot of material as the Court is aware on this -- on any of the issues or any of the problems with the pre-sentence report. . . .

I would prefer other representation.

THE COURT:  Well, that's why we continued the case the last time.  This is not the first time you've been brought down for sentencing.

THE DEFENDANT:  No, I understand that, Your Honor, very definitely.

THE COURT:  And we thought that the reasons to continue the last sentencing were weak, but . . . we thought we'd give you the benefit of the doubt and extend -- continue the sentencing till today, but we're not willing to continue it any further.

So we'll proceed.

THE DEFENDANT:  Then I would have to represent myself, Your Honor. . . .

I don't know how he could represent me, not knowing any of the issues.  You know, no slight to [trial counsel], but he doesn't --

THE COURT:  Well, we've looked at what you've submitted --

THE DEFENDANT:  -- but he doesn't have a crystal ball, either.

THE COURT: -- and there doesn't seem to be much in issue.

Why don't we go through what you want to raise and see if there's anything in it that has any merit.  On the

5

surface, it doesn't seem to have any merit; but maybe I'm missing something and we'll give you an opportunity to explain.

Let's take your points one by one and we'll deal with them in that way.

What's your first point?

THE DEFENDANT:  May I sit, Your Honor?

THE COURT:  Sure.

Why don't you stay there in case -- he doesn't bother you sitting there, right?

[TRIAL COUNSEL]:  Better not.  I've known him for too long.

THE DEFENDANT:  No, no, not at all.  [My attorney] and I have known each other -- we're friends.  We've known each other for 20 years.

THE COURT: Okay.

THE DEFENDANT:  That's not a personal slight at all.

THE COURT: Okay.  Okay.

App. at 525-28 (Transcript of Sentencing Hearing, April 4, 1994).

The district court then listened as Salemo argued the inaccuracy of the pre-sentence report and the application of case law to his situation.  After rejecting Salemo's arguments, the district court imposed a sentence of ninety-six months imprisonment, followed by five years supervised release, restitution of $15,000, no fine, and a $100 special assessment.

## II.

When Salemo filed the notice of appeal from his sentence he requested appointment of counsel, and the district court

6

appointed appellate counsel who filed a brief on Salemo's behalf. Salemo has also filed a *pro se* brief in this appeal.[2]

Salemo raises an issue in his *pro se* brief that was not raised in the brief submitted by his attorney on appeal. Salemo claims that his purported waiver of counsel at the sentencing hearing was not knowing, intelligent and voluntary, and that the sentencing court therefore erred in allowing him to represent himself at sentencing. The government concedes that the trial court did not engage in an inquiry with Salemo to ascertain the extent of his understanding of the ramifications of dispensing with counsel and proceeding *pro se* at the sentencing hearing. Nevertheless, the government argues that "[t]he record that was before the trial court showed that Salemo understood the nature of the sentencing proceeding and the possible consequences." Brief for Appellee at 34. The government further claims that the trial court properly inferred that Salemo's waiver of counsel was knowing and intelligent and that the record supports that implicit finding.

## A.

The Supreme Court has recognized that a criminal defendant has the constitutional right to defend him/herself at trial. <u>Faretta v. California</u>, 422 U.S. 806, 814–16 (1975); <u>Adams v.</u>

---

[2] This case presents one of the rare instances in which a defendant who is represented by court appointed appellate counsel is also allowed to brief his own appeal before this Court. We emphasize that ordinarily we do not consider the *pro se* briefs of counselled parties and we do not intend our consideration of the dual briefs filed on behalf of the defendant in this case to signal a departure from our usual practice to the contrary.

7

<u>United States ex rel. McCann</u>, 317 U.S. 269, 279 (1942) (the Sixth Amendment right to counsel implicitly includes the "correlative right to dispense with a lawyer's help").  The Court, however, has scrupulously required that a defendant's waiver of counsel be both voluntary and a "knowing and intelligent relinquishment or abandonment of a known right or privilege."  <u>Edwards v. Arizona</u>, 451 U.S. 477, 482 (1981).  Whether a defendant has voluntarily, knowingly and intelligently relinquished the right to counsel "depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'"  <u>Id.</u> (quoting <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938)).  In general, however, the Supreme Court has required that "courts indulge in every reasonable presumption against waiver."  <u>Brewer v. Williams</u>, 430 U.S. 387, 404 (1977).

In <u>United States v. Welty</u>, 674 F.2d 185 (3d Cir. 1982), we set forth guidelines for conducting a proper inquiry following a defendant's request for substitution or waiver of counsel:

> First, the court must decide if the reasons for the defendant's request for substitute counsel constitute good cause and are thus sufficiently substantial to justify a continuance of the trial in order to allow new counsel to be obtained.  If the district court determines that the defendant is not entitled to a continuance in order to engage new counsel, the defendant is then left with a choice between continuing with his existing counsel or proceeding to trial *pro se*, thus bringing into play the court's second stage of inquiry.  Since the decision to proceed *pro se* involves a waiver of the defendant's sixth amendment right to counsel, the district court then has the responsibility of ensuring that any decision by the defendant

8

> to represent him[/her]self is intelligently and competently made.

> It is vital that the district court take particular pains in discharging its responsibility to conduct these inquiries concerning substitution of counsel and waiver of counsel. . . . [A] trial cannot be permitted to go forward when a defendant does not fully appreciate the impact of his[/her] actions on his[/her] fundamental constitutional rights.

Id. at 187 (citation omitted).

In Welty, we concluded that the defendant could not have effectively waived his right to counsel because "the record reveal[ed] no inquiry by the district court judge as to the reasons for Welty's dissatisfaction with his appointed counsel and little inquiry into whether Welty's decision to proceed *pro se* was made knowingly and intelligently." Id. at 189. Similarly, in McMahon v. Fulcomer, 821 F.2d 934 (3d Cir. 1987), we held that the defendant did not knowingly and intelligently waive his right to counsel where the "record reflect[ed] a total absence of any `searching inquiry' or colloquy as to defendant's understanding of the dangers and disadvantages he faced proceeding *pro se*." Id. at 945.

Conversely, we upheld the validity of a defendant's waiver of counsel in Government of Virgin Islands v. James, 934 F.2d 468 (3d Cir. 1991). There, the trial court was not presented with a request for substitute counsel as James sought only to represent himself. Throughout the pre-trial proceedings James had been represented by a public defender. However, when jury selection was to begin James told the court that he wanted to discharge his

9

attorney and represent himself. Id. at 470. The district judge

conducted a lengthy colloquy with James in which the court

informed him of the perils of self-representation. Id. at 470.

On review, we considered the contents of that colloquy and

concluded that James' waiver was knowing and intelligent:

> After admonishing appellant with the old
> adage that a lawyer who has himself for a
> client is a fool, the court discussed the
> nature of the possible charges against James
> and the possible penalties he faced; James
> was apprised of the difficulty he would face
> in getting his decision to waive overturned
> on appeal from a conviction; the court
> determined that James had some familiarity
> with the workings of a trial as a result of
> two prior convictions; the court also
> determined that James' waiver was voluntary.
> . . . Most significantly, the court did not
> allow James to proceed completely unassisted
> but appointed stand-by counsel to sit with
> him and answer any questions that he may have
> had during trial.

Id. at 472-73.[3]

**B.**

The issue before us is, of course, raised in a different

context as Salemo's purported waiver occurred at sentencing as

opposed to trial. This distinction is clearly relevant to the

content of the colloquy which the court must have with the

defendant. It does not, however, eliminate the need for the

district court to make an inquiry sufficient to support a finding

that the waiver of counsel is voluntary, knowing and intelligent.

It is well settled that "[i]t is the solemn duty of a

---

[3] James was also required to execute a waiver form attesting that the waiver was made voluntarily and with full knowledge and understanding. Id. at 470 n.2.

10

federal judge before whom a defendant appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of this constitutional right <u>at every stage of the proceedings.</u>" <u>Von Moltke v. Gillies</u>, 332 U.S. 708, 722 (1948) (Black, J., plurality opinion) (emphasis added). Neither logic nor precedent supports carving out an exception when the waiver occurs at sentencing. Of course, the inquiry at sentencing need only be tailored to that proceeding and the consequences that may flow from it. Therefore, it need not be as exhaustive and searching as a similar inquiry before the conclusion of trial. "Sentencing hearings demand much less specialized knowledge than trials; for instance, the Federal Rules of Evidence do not apply in sentencing hearings." <u>United States v. Day</u>, 998 F.2d 622, 626 (1st Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 2140 (1994). Nevertheless, sentencing is a critical and often times complicated part of the criminal process that contains subtleties which may be beyond the appreciation of the average layperson seeking to represent him/herself.

We have, for example, previously noted that "[t]he [Sentencing] Guidelines contain a complex procedure for determining the appropriate increase in offense level for conviction of multiple counts." <u>United States v. Johnson</u>, 931 F.2d 238, 242 (3d Cir. 1991). <u>See also</u> <u>United States v. Smith</u>, 997 F.2d 396, 398 (8th Cir. 1993) (Gibson, J., concurring) ("The guidelines . . . have created a complex hypertechnical system consuming great amounts of judicial time for both trial and appellate judges."). Commentators have also bemoaned the

11

complexities of our sentencing system.  <u>Id.</u> at 399 (Bright, J.,

dissenting) (citing articles that "call attention to the

frustrations of lawyers, judges and probation officers who must

try to understand the complexities of the [sentencing] system").

Indeed, in some cases, one's ultimate fate is determined

more by the application of the Guidelines than the determination

of innocence or guilt.  For example, sentencing judges are not

limited to a consideration of the specific conduct that

constitutes the offense of conviction in determining whether a

given offense characteristic applies.  Under USSG § 1B1.3, a

judge generally must consider all "relevant conduct."[4]  Thus,

"[t]he Guidelines are clear that conduct beyond the precise acts

of the offense of conviction may be used to determine specific

offense characteristics."  <u>United States v. Frierson</u>, 945 F.2d

650, 653 (3d Cir. 1991).  Accordingly, we have upheld sentences

_____

[4]     Section 1B1.3 of the Guidelines states:

**Relevant   Conduct   (Factors   that   Determine   the   Guideline
Range)**

> Unless otherwise specified, . . . specific
> offense characteristics . . . shall be
> determined on the basis of . . . all acts and
> omissions committed or aided and abetted by
> the defendant, or for which the defendant
> would be otherwise accountable, that occurred
> during the commission of the offense of
> conviction, in preparation for that offense,
> . . . or that otherwise were in furtherance
> of that offense.

USSG § 1B1.3(a).  For certain crimes, relevant conduct also
includes any acts or omissions that were "part of the same course
of conduct or common scheme or plan as the offense of
conviction." USSG § 1B1.3(a)(2).

12

which were based in part upon conduct for which the defendant was not convicted.  See United States v. Cianscewski, 894 F.2d 74, 80-81 (3d Cir. 1990); United States v. Ryan, 866 F.2d 604, 608-09 (3d Cir. 1989).  Given these intricacies, it is particularly important that a sentencing court be certain that a defendant understands the perilous path he/she is going down in attempting to proceed to sentencing without the benefit of counsel.

In addition, a defendant who is unfamiliar with the post conviction process may inadvertently waive a meritorious argument that he/she might otherwise have raised on appeal.  Thus, at sentencing, just as at trial, "a defendant's waiver of counsel can be deemed effective only where the district court has made a searching inquiry sufficient to satisfy him[/her] that the defendant's waiver was understanding and voluntary." Welty, 674 F.2d at 189.  We have not previously, nor do we now, require a rote dialogue "such as that mandated for guilty plea proceedings conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure."  James, 934 F.2d at 473. However, at a minimum, a trial judge must make "a searching inquiry sufficient to satisfy him[/her] that the defendant's waiver was understanding and voluntary." Welty, 674 F.2d at 189.  The court's inquiry must be calculated to insure that the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he[/she] knows what he[/she] is doing and [the] choice is made with eyes open.'" Faretta, 422 U.S. at 834 (quoting Adams, 317 U.S. at 279).  "Perfunctory questioning is not sufficient." Welty, 674 F.2d at 187.  Where the record

13

contains no such inquiry, or one that is inadequate, there can be no valid waiver of the right to counsel. Salemo's purported waiver was accepted without such an inquiry and therefore it cannot stand.

## C.

The inquiry required here did not have to include a discussion of the reasons for Salemo's request for a continuance in order to get new counsel because Salemo clearly stated the reasons for his dissatisfaction when he requested another continuance of the sentencing date. See McKee v. Harris, 649 F.2d 927, 933 (2d Cir. 1981). When a defendant insists on proceeding *pro se*, the next inquiry a court must make under Welty is whether the defendant's request for waiver of counsel is voluntary, knowing and intelligent. Here, Salemo's own language casts doubt upon the voluntariness of his request. Although a defendant can be deemed to have waived the right to counsel by refusing the assistance of appointed counsel and persisting in a demand for different counsel, see Wiggins v. Procunier, 753 F.2d 1318, 1320 (5th Cir. 1985), a defendant will not normally be deemed to have waived the right to counsel by reluctantly agreeing to proceed *pro se* under circumstances where it may appear that there is no choice. See United States ex rel. Martinez v. Thomas, 526 F.2d 750, 755-56 (2d Cir. 1975) (defendant who represented himself "reluctantly, unwillingly and greatly to his detriment" had "no freedom of choice" but was merely "bowing to the inevitable," and was thereby denied his constitutional rights). Here, the circumstances were such that the district court had an obligation

14

to make a sufficient inquiry of the defendant to allow the court to decide whether the defendant was "bowing to the inevitable" or voluntarily and affirmatively waiving his right to counsel.

We do not, however, suggest that the district court should have allowed itself to be manipulated into granting a continuance and appointing new counsel. Nevertheless, the defendant's apparent reluctance to proceed without counsel should have alerted the court to the need to inform the defendant of the pitfalls and technicalities of the sentencing hearing which was about to begin. Such a warning would have better enabled the defendant to decide if he still wanted to proceed *pro se* instead of allowing counsel, who was standing at his side, to represent him.

We appreciate that the sentencing judge (who also conducted Salemo's trial) may have felt that he had sufficient familiarity with this defendant to accept a waiver of counsel for purposes of sentencing without a searching inquiry into Salemo's familiarity with, or appreciation of, the complexities of sentencing. Before sentencing, Salemo, acting *pro se*, filed several documents including an extensive challenge to the pre-sentence report, objections to the revised pre-sentence report, a sentencing memorandum, a letter to the trial court objecting to the government's sentencing memorandum, and voluminous exhibits in support of his arguments.[5] Thus, we can understand how the

---

[5] In addition, at his sentencing, Salemo made respectable legal arguments (citing cases which were, for the most part, relevant to his argument), argued the application of specific

15

sentencing judge may have concluded that Salemo was better able to represent himself than the average defendant. However, we cannot infer a valid waiver of the right to counsel based upon the district court's subjective overall impression of a defendant. We have previously stated "that a colloquy between the defendant and trial judge is the preferred method of ascertaining that a waiver is voluntary, knowing and intelligent." James, 934 F.2d at 473. See also Wiggins, 753 F.2d at 1320 ("We are convinced that a colloquy between a defendant and a trial judge is the preferred method of ascertaining that a waiver is voluntary, knowing and intelligent."). We reiterate that "[i]t is appropriate for this searching inquiry to appear upon the record," McMahon, 821 F.2d at 945, so as to allow a reviewing court to examine the district court's determination in the event of an appeal. Here, the district court's failure to do this requires a remand for resentencing.

Moreover, we decline to engage in a harmless error analysis here. The right to representation by counsel in a criminal proceeding is one of the most fundamental and cherished rights guaranteed by the Constitution. See Johnson, 304 U.S. at 462 (describing assistance of counsel as "one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty"). It is "among those `constitutional rights [which are] so basic to a fair trial that their infraction

provisions of the Sentencing Guidelines, and he has now successfully presented a legal argument to this Court on appeal.

16

can never be treated as harmless error.'" <u>Welty</u>, 674 F.2d at 196 n.6 (quoting <u>Chapman v. California</u>, 386 U.S. 18, 23 & n.8 (1967)). Furthermore, the purpose and effect of the Sixth Amendment is to "withhold[] from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel." <u>Johnson</u>, 304 U.S. at 463 (footnotes omitted). Accordingly, we do not feel that the deprivation of the defendant's right to representation at sentencing under the circumstances of this case justifies a harmless error analysis.

In summary, we do not believe that the district court's instruction for Salemo's appointed counsel to serve as standby counsel during the sentencing is a sufficient substitute for obtaining a valid waiver of the right to counsel from the defendant. Although the court's instruction was a noteworthy attempt to safeguard Salemo's Sixth Amendment right, it did not satisfy the court's "responsibility of ensuring that any choice of self-representation is made . . . with an awareness of the dangers and disadvantages inherent in representing oneself." <u>Welty</u>, 674 F.2d at 188.

**III.**

Salemo raises several other issues pertaining to his sentencing. He claims that the district court improperly calculated the amount of loss by "double counting" the same funds as both actual and intended loss. He argues that his sentence level should be reduced by three points because his federal conviction in Florida and state conviction in Arizona were part

17

of a common scheme as defined in USSG § 4A1.2. Further, Salemo objects to the two point enhancement he received for "more than minimal planning" and complains that he was improperly denied a two point reduction for acceptance of responsibility. Lastly, Salemo, through the brief submitted by his counsel, complains that he did not receive "sufficient notice" of the potential for sentence enhancement for commission of a crime while on bail release, as required by the Background Commentary accompanying USSG § 2J1.7. We decline to take any position as to the merits of any of these arguments now. On remand, these arguments can be presented to the sentencing court by competent legal counsel, or by the defendant after an appropriate waiver of counsel.

We will affirm the judgment of conviction but will vacate the sentence and remand for resentencing.

United States v. Salemo
Nos. 94-1361 and 94-1438


ALITO, Circuit Judge. concurring:


    I would not write separately here if the majority opinion did

not include the following paragraph in its opinion.

        Moreover, we decline to engage in a harmless error
    analysis here. The right to representation by counsel
    in a criminal proceeding is one of the most fundamental
    and cherished rights guaranteed by the Constitution.
    See Johnson, 304 U.S. at 462 (describing assistance of
    counsel as "one of the safeguards of the Sixth
    Amendment deemed necessary to insure fundamental human
    rights of life and liberty").  It is "among those
    'constitutional rights [which are] so basic to a fair
    trial that their infraction can never be treated as
    harmless error.'"  Welty, 674 F.2d at 196 n.6 (quoting
    Chapman v. California, 386 U.S. 18, 23 & n.8 (1967)).
    Furthermore, the purpose and the effect of the Sixth
    Amendment is to "withhold[] from federal courts, in all
    criminal proceedings, the power and authority to
    deprive an accused of his life or liberty unless he has
    or waives the assistance of counsel." Johnson, 304
    U.S. at 463 (footnotes omitted).  Accordingly, we do
    not feel that the deprivation of the defendant's right
    to representation at sentencing under the circumstances
    of this case justifies a harmless error analysis.

Maj. Op. 15-16.


    If this paragraph is narrowly interpreted to mean only that

the error in this case was not harmless, then this paragraph is

correct -- but unnecessary -- for nobody has ever claimed that

the challenged actions of the district court, if they amounted to

constitutional error, could be found, based on the record that we

have, to have been harmless.  The government's brief made no such

19

argument, and at oral argument the government emphasized that it was not advancing any such claim.

I am concerned, however, that the paragraph in question will be interpreted to mean something more than merely that the error here was not harmless. After all, the majority begins this paragraph by saying that it "decline[s] to engage in a harmless error analysis" (Maj. Op. at 15), not that it concludes, after performing such an analysis, that the error was not harmless. Similarly, the majority concludes the paragraph by stating that "a harmless error analysis" is not "justifie[d]." Id. In between, the majority inserts quotations, taken from cases involving the right to counsel at trial, that strongly suggest that the deprivation of counsel can never be harmless. Thus, the paragraph in question may well be read broadly to mean that the deprivation of counsel at sentencing can never be harmless error.[6] Such a suggestion would, of course, be dictum and thus not binding on our court or on the district courts, but I am not prepared to endorse such dictum in this case.

In suggesting that the deprivation of counsel can never be harmless, the majority quotes two cases -- this court's decision

---

[6]Such a blanket rule could produce some strange results. For example, suppose that a defendant does not validly waive counsel at sentencing but is given the mandatory minimum sentence prescribed by statute. Or suppose that a defendant who has not validly waived counsel at sentencing is given the minimum sentence within the range specified by the Sentencing Guidelines and that the defendant, now represented by able counsel, concedes that the range calculated by the district court was correct and cannot think of any grounds for departure. In this case, must the sentence to be vacated and the case remanded so that the very same sentence can be imposed with counsel present?

in <u>Welty</u> and the Supreme Court's decision in <u>Johnson</u>.  Both of these cases concerned the right to counsel at trial, not sentencing.  The majority's quotation from <u>Welty</u> includes a quotation from <u>Chapman</u>, 386 U.S. at 23 & n.8.  The <u>Chapman</u> quotation likewise concerns the right to counsel at trial, not sentencing.  Now, it may well be that these precedents should be <u>extended</u> to govern the deprivation of counsel at sentencing, but neither the Supreme Court nor this court has yet done so, and I think that such an extension would warrant careful analysis.

For one thing, such an extension would require consideration of decisions such as <u>Satterwhite v. Texas</u>, 486 U.S. 249 (1988), that make it clear that the deprivation of counsel in violation of the Sixth Amendment can be harmless in some contexts.  In that case, a defendant sought to have his sentence reversed because of the use at a capital sentencing proceeding of psychiatric testimony taken in violation of the Sixth Amendment.  <u>Id.</u> at 253–54.  In support of his position, the defendant relied on the following statement from <u>Holloway v. Arkansas</u>, 435 U.S. 475, 489 (1978):

> [W]hen a defendant is deprived of the presence and assistance of his attorney, either throughout the <u>prosecution or during a critical stage</u> in, at least, the prosection of a capital offense, reversal is automatic.  <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963); <u>Hamilton v. Alabama</u>, 368 U.S. 52 (1961); <u>White v. Maryland</u>, 373 U.S. 59 (1963).

The <u>Satterwhite</u> Court, however, refused to adopt such a categorical rule, noting that the Court had previously approved harmless error analysis in a number of cases involving violations

21

of the Sixth Amendment.  See Milton v. Wainwright, 407 U.S. 371 (1972) (harmless error analysis applied to confession obtained in violation of Massiah v. United States, 377 U.S. 201 (1964)); Monroe v. Illinois, 434 U.S. 220 (1977) (harmless error analysis applied to admission of identification testimony obtained in violation of right to counsel at postindictment lineup); see also Coleman v. Alabama, 399 U.S. 1 (1970) (harmless error applied to violation of right to counsel at preliminary hearing).  Rather, the Satterwhite Court distinguished Holloway stating that reversal was automatic only when the "deprivation of the right to counsel affected--and contaminated--the entire criminal proceeding."  486 U.S. at 257.  The Court thus held that where a reviewing court could make an "intelligent judgment" as to the effect that the constitutional violation could have on the sentencing jury, harmless error analysis applied.  486 U.S. at 258.  See also Sullivan v. Louisiana, 113 S. Ct. 2078, 2083 (1993) (Rehnquist, C.J., concurring) (noting that the Supreme Court has "long since rejected the argument that, as a general matter, the Sixth Amendment prohibits the application of harmless-error analysis in determining whether constitutional error had a prejudicial impact on the outcome of the case").

I also note that one other court of appeals has indicated that an invalid waiver of counsel at sentencing is subject to harmless error analysis.  Richardson v. Lucas, 741 F.2d 753 (5th Cir. 1984).  Cf.  Golden v. Newsome, 755 F.2d 1478 (11th Cir. 1985) (denial of right to counsel at sentencing not subject to harmless error analysis); United States v. Balough, 820 F.2d 1485

22

(9th Cir. 1987) (denial of right to counsel at hearing on motion to withdraw guilty plea and sentencing not subject to harmless error analysis).

In conclusion, I emphasize that I express no view as to whether the unconstitutional deprivation of counsel at sentencing can be harmless.  That is precisely my point:  without any need to decide this question and without briefing or argument on the issue, I refuse to endorse the majority dictum.