NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4395
_____

UNITED STATES OF AMERICA

v.

BRUCE GORDON LOW, JR.,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(Crim. No. 1-06-cr-00791-001)
District Judge: Hon. Joseph H. Rodriguez

Argued: October 26, 2010

Before: McKEE, *Chief Judge*, SLOVITER and RENDELL, *Circuit Judges*

(Opinion filed: December 1, 2010)

ANNETTE VERDESCO, ESQ. (Argued)
Caruso Pope Edell Picini, P.C.
60 Route 46 East
Fairfield, NJ 07004

*Attorney for Appellant*

PAUL J. FISHMAN, ESQ.
United States Attorney
GEORGE S. LEONE, ESQ.
Chief, Appeals Division

Office of the United States Attorney
970 Broad Street
Newark, NJ 07102
NORMAN GROSS, ESQ. (Argued)
Assistant United States Attorney
Camden Federal Building and United States Courthouse
401 Market Street, 4th Floor
Camden, NJ 08101

*Attorneys for Appellee*

_____

OPINION

_____

McKEE, *Chief Judge*.

Bruce Gordon Low appeals from the district court's judgment of sentence arguing that the district court deprived him of his Sixth Amendment right to counsel by directing him to proceed *pro se* at his sentencing hearing. He also challenges the resulting sentence on numerous grounds. Although the district court was presented with an obviously vexing set of circumstances and tried to respond appropriately, we nevertheless conclude that the court did not afford Low his Sixth Amendment right to be represented by counsel at sentencing. Accordingly, for the reasons set forth below, we will vacate Low's sentence and remand for resentencing.

**I.**

Because we write primarily for the parties, we will recite only the facts and procedural history that are necessary for the disposition of this appeal. Although Low's change of plea colloquy and guilty plea occurred on September 28, 2006, his sentencing

2

hearing did not occur until October 21, 2008. Four different attorneys represented Low during the lengthy period that began with Low's guilty plea and ended with his sentencing hearing. Prior to appointing the fourth attorney to represent Low, the court warned Low that it would not appoint another. The court explained:

> [T]hree attorneys have already been involved already. . . . Now, Mr. Low, giving greater respect to your right to counsel can be strained to the point where a Court can consider itself at the end of the line. . . . I'm going to appoint another counsel. . . . If you have any dispute with that counsel, he will not be relieved, he'll be standby counsel and you'll proceed *pro se*. There's a limit to how many lawyers can be assigned to you under the circumstances of this case. So I'm saying very clearly this is the last person who will respond to the motion. If you have a disagreement with him, you argue it yourself *pro se*, he'll be standby to assist you . . . . So I want you to understand that clearly, this is the last lawyer.

S.A. 52-53.

Despite the court's warning that Low's fourth attorney would be his last, Low sent a letter asking the district court to remove his fourth attorney from the case and requesting appointment of a fifth attorney. The district court dismissed Low's fourth attorney as Low requested. However, the court refused to appoint another attorney and ordered Low to proceed *pro se* at his sentencing hearing, with his fourth attorney serving as standby counsel.

Immediately following the hearing, the government sent a letter to the court stating:

> As you know, during yesterday's proceedings in this case, Your Honor granted the defendant's motion to represent himself at sentencing, and directed Mr. Renner to no longer actively represent the defendant. After that hearing, it belatedly occurred to me that, before sentencing takes place, the Court should conduct a colloquy of the defendant pursuant to *Faretta v. California*, 422 U.S. 806 (1975), in order to insure that his decision to

3

proceed *pro se* is knowing and voluntary. . . . I therefor[e] request that you conduct a *Faretta* colloquy of the defendant before the start of the sentencing hearing.

S.A. 93. In response to the government's request for a *Faretta* colloquy, Low wrote a letter to the court objecting to any hearing and to the government's representation that he had elected to proceed *pro se*, reiterating that he was forced to do so despite requesting appointment of new counsel.

Low's sentencing hearing finally proceeded on October 21, 2008, with Low acting *pro se* and his fourth attorney serving as standby counsel. At sentencing, the district court explained to Low some of the dangers of proceeding *pro se* and told Low that he had waived his right to counsel by his conduct. However, the court's explanation did not serve to warn Low of the risks of proceeding *pro se* because Low was already acting *pro se* at the time he received this information, and he was not given the opportunity to proceed at sentencing with his fourth attorney acting as counsel. At the conclusion of Low's sentencing hearing, the district court sentenced Low to 151 months of imprisonment on the drug offense and a concurrent sentence of 120 months of imprisonment on the firearms offense.

## II.[1]

Although Low does not contest that the district court properly deemed his conduct sufficiently dilatory to trigger a waiver by conduct, Low argues any such waiver was not valid because the district court failed to warn him of the dangers of proceeding *pro se*

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291.

4

before forcing him to do so, and that his Sixth Amendment right to counsel was thereby violated.

We exercise plenary review over Low's claim that the district court violated his Sixth Amendment right to counsel "since it is tantamount to a claim of an ineffective waiver of a constitutional right." *United States v. Goldberg*, 67 F.3d 1092, 1097 (3d Cir. 1995). The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "It is well settled that the erroneous deprivation of a criminal defendant's fundamental right to the assistance of counsel is *per se* reversible error." *Goldberg*, 67 F.3d at 1103.

A waiver of the right to counsel is only valid if it is knowing, voluntary, and intelligent. *Id.* at 1099. In *Faretta v. California*, 422 U.S. 806, 835 (1975), the Supreme Court held that a trial court must warn the defendant of the dangers of proceeding *pro se* as a constitutional prerequisite to a valid waiver of the right to counsel. Moreover, in *United States v. Welty*, 674 F.2d 185, 189 (3d Cir. 1982), we held that "a defendant's waiver of counsel can be deemed effective only where the district court judge has made a searching inquiry sufficient to satisfy him that the defendant's waiver was understanding and voluntary." Thus, "our decision in *Welty* mandates that trial courts conduct a *Faretta*-type inquiry before permitting a defendant who asks to represent himself to do so." *Goldberg*, 67 F.3d at 1099.

Although Low did not expressly waive his right to counsel, we have held that "[o]nce a defendant has been warned that he will lose his attorney if he engages in

dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel." *Id.* at 1100. However, a valid waiver by conduct "requires that a defendant be warned about the consequences of his conduct, including the risks of proceeding *pro se*." *Id.* at 1101. In *Goldberg*, we held that there was no valid waiver by conduct because the district court had failed to provide the defendant with a *Faretta/Welty* colloquy concerning the risks of proceeding *pro se*. *Id.* at 1102-03.

It is undisputed that Low did not receive a *Faretta/Welty* colloquy. The conclusion that naturally flows from our holding in *Goldberg* is that Low did not validly waive his right to counsel by his conduct. The government argues that, unlike *Goldberg* where the defendant was forced to proceed *pro se* at trial, Low was only forced to proceed *pro se* at sentencing and therefore, a formal colloquy was not required.[2]

The distinction between proceeding *pro se* at sentencing as opposed to trial "is clearly relevant to the content of the colloquy which the court must have with the defendant. It does not, however, eliminate the need for the district court to make an inquiry sufficient to support a finding that the waiver of counsel is voluntary, knowing

---

[2] The government also attempts to rely on Low's response to the letter the government sent to the court requesting that Low be given a *Faretta* colloquy. The government claims that Low's response constitutes invited error. The argument is frivolous.

The doctrine of invited error rests on the fact that "'[a] defendant cannot complain on appeal of alleged errors invited or induced by himself.'" *United States v. Console*, 13 F.3d 641, 660 (3d Cir. 1993) (quoting *United States v. Lewis*, 524 F.2d 991, 992 (5th Cir. 1975)). Nothing on this record suggests that the court relied on the uncounseled statements of a vexatious defendant in determining how to proceed or what the Sixth Amendment required.

and intelligent." *United States v. Salemo*, 61 F.3d 214, 219 (3d Cir. 1995). "Neither logic nor precedent supports carving out an exception when the waiver occurs at sentencing. Of course, the inquiry at sentencing need only be tailored to that proceeding and the consequences that may flow from it." *Id.*

In *Salemo*, the defendant, who requested to proceed *pro se*, was allowed to do so at sentencing without receiving a *Faretta/Welty* colloquy; however, the court assigned him standby counsel. *Id.* at 222. Despite the assignment of standby counsel at the defendant's sentencing hearing, we held that the defendant's Sixth Amendment right to counsel was violated because he did not receive a *Faretta/Welty* colloquy. *Id.* We reached this holding based on our conclusion that standby counsel at sentencing was not a substitute for a valid waiver of counsel because "it did not satisfy the court's 'responsibility of ensuring that any choice of self-representation is made . . . with an awareness of the dangers and disadvantages inherent in representing oneself.'" *Id.* (quoting *Welty*, 674 F.2d at 188).

Similarly, Low received no *Faretta/Welty* colloquy, but he was assigned standby counsel. As we have already held in *Salemo*, in the absence of a *Faretta/Welty* colloquy, a trial court's assignment of standby counsel to a defendant proceeding *pro se* does not sufficiently protect a defendant's Sixth Amendment right to counsel. Moreover, unlike the defendant in *Salemo*, Low did not request to proceed *pro se*. Therefore, we hold that the district court violated Low's Sixth Amendment right to counsel when it forced him to proceed *pro se* without providing an adequate *Faretta/Welty* colloquy.[3]

---

[3] The government is correct that "we have on occasion looked beyond the District

7

**III.**

Before concluding, it is worth reiterating that we understand that the district court was faced with a vexatious defendant who insisted on dismissing attorney after attorney and who may well have been trying to do little more than "game the system." Moreover, the record is sufficiently clear that we need not resort to reading between the lines to know that Low's attorneys were consistently frustrated when dealing with him. Faced with this situation, the district court was quite properly concerned with not allowing Low to sabotage the proceedings or to impose his will on the court by constantly dismissing attorneys and requesting new representation. Nevertheless, it is clear from our precedent, as well as from the Court's opinion in *Faretta*, that this will often be the situation when *Faretta* is implicated. If Low was acting out of bad faith, he is no less entitled to know the perils of his conduct than those who may want to proceed *pro se* for what they believe

---

Court's colloquy to determine whether a defendant understood the charges and sentence." *United States v. Jones*, 452 F.3d 223, 232 (3d Cir. 2006). However, it is the court's "usual obligation to conduct a detailed and comprehensive inquiry." *Id.* at 233. The government points to Low's Rule 11 colloquy as evidence that he received some warnings regarding the risks of proceeding *pro se*. However, his plea hearing occurred almost two years before the court forced Low to proceed *pro se*. Any warnings given at this time were insufficient, especially since Low never received any formal *Faretta/Welty* colloquy.

The government also points to warnings that the district court gave Low at his sentencing hearing after it had already forced Low to proceed *pro se*. Clearly, any warnings given after the court ordered Low to proceed *pro se* were insufficient because warning someone of an event that has already occurred is not actually a warning. Additionally, this post hoc warning defeated the very purpose of the *Faretta/Welty* colloquy which is to warn the defendant about the perils of proceeding *pro se* and to allow the defendant, after receiving these warnings, to change his/her mind and proceed with counsel, if s/he so desires. Low should have been warned of the perils of proceeding *pro se* when his fourth attorney was appointed and the court warned him of the possibility of a waiver.

to be the best of reasons. Accordingly, we must vacate this sentence and remand for a new sentencing hearing preceded by warnings consistent with *Faretta* and *Welty*. If Low then persists in dismissing his attorney, the court may deem that conduct to constitute a waiver of his Sixth Amendment right to counsel.[4]

---

[4] Since we are remanding for a new sentencing hearing, we need not address Low's claims of sentencing errors.

9

*United States v. Bruce Gordon Low, Jr.*, No. 08-4395

SLOVITER, *Circuit Judge, Dissenting*.

No one could argue with Chief Judge McKee's exemplary exposition of the legal principles applicable when a defendant requests counsel and/or chooses to represent himself. My quarrel with the majority lies in the application of those principles to the case at hand. Low didn't just request *a* counsel. He requested his *fifth* counsel. The majority states that Low "may well have been trying to do little more than 'game the system.'" I think that Low was indeed gaming the system, and that we should not permit him to do so.

A brief recapitulation of the facts will show why.

On September 28, 2006, Low and his court-appointed counsel, Lori Koch, both signed a plea agreement whereby Low agreed to plea guilty to one count of knowingly and intentionally distributing and possessing with the intent to distribute "more than fifty grams of cocaine base, to wit, 'crack' cocaine" and one count of being a felon in possession of a firearm. App. at 8. That same day, in the presence of counsel Low entered his guilty plea after an extensive colloquy with the District Court, which the District Court accepted.

Low subsequently dismissed Attorney Koch and retained private counsel, Attorney Ari Karpf. On May 30, 2007, the evening before his sentencing was scheduled to occur, Attorney Karpf moved to withdraw based on irreconcilable differences. Low stated his intent to have counsel withdraw and also moved to withdraw his guilty plea. Low asserted that prior counsel coerced him into pleading guilty and that none of the

1

substances he possessed contained crack. The District Court granted the counsel's motion to withdraw and appointed Attorney Frederick Klepp as the replacement. On August 2, 2007, Low withdrew his motion to withdraw his guilty plea. However, on August 13, 2007, Low reinstated his motion to withdraw his plea. Shortly thereafter, Low moved to remove Klepp as counsel.

During a hearing on the motions, the District Court instructed Low that he was going to grant his motion for withdrawal of counsel and appoint another counsel. As the majority points out, the District Court warned Low at length that "[i]f you have any dispute with [new] counsel, he will not be relieved, he'll be standby counsel and you'll proceed pro se." Supp. App. at 52. Low replied that he "[u]nderstood." Supp. App. at 53. Attorney John Renner was appointed as Low's fourth counsel. During an April 23, 2008 hearing, Low again withdrew the motion to withdraw his plea and stated, under oath, that he understood that at sentencing he would not be challenging the type of narcotics described in the plea agreement.

On June 7, 2008, Low asked that he be relieved of Attorney Renner and be appointed a fifth attorney. During a July 22, 2008 hearing, the Court granted Low's motion to remove Attorney Renner but, pursuant to its previous warning, refused to provide Low with another attorney. However, the Court instructed Attorney Renner to remain available as standby counsel.

The next day, the Government wrote to the District Court, noting that because Low was now proceeding pro se, the Court should conduct a colloquy to warn Low of the potential pitfalls of self-representation pursuant to *Faretta v. California*, 422 U.S. 806

2

(1975). Low responded by letter stating, "I . . . *object* to this hearing," Supp. App. at 95 (emphasis in original), and stated, "I am prepared to move forward with sentencing on my own." *Id.* Low also objected to Renner "step[ing] in and handl[ing] the sentencing hearing . . . ." *Id.* (internal quotation marks omitted).

Notwithstanding Low's objection, at the beginning of the sentencing hearing, the District Court specifically called to Low's attention the dangers of pro se representation. App. at 105-06. The Court told Low that it wanted to be sure that "you're fully aware that in proceeding without an attorney that you could be potentially subjecting yourself to additional problems because of the lack of full knowledge of the situations that are involved, or the law, and what they may very well mean with respect to your eventual outcome in this case." App. at 105. The Court then asked if Low understood these potential problems and whether he understood, specifically as to sentencing, the "issues involved with respect to acceptance of responsibility, [and] other calculations within the Presentence Report . . . ." App. at 106. While at first not understanding the question, upon clarification Low stated that he did understand. However, Low continued to insist that he was not choosing to proceed pro se. The Court responded that by rejecting four lawyers, Low had, by his actions, waived his right to an attorney.

However, the Court directed that Attorney Renner be present in order to safeguard Low's rights, should Low need assistance. During sentencing, Low consulted Renner at least twenty times on a variety of issues. Indeed, he even referred to Renner as "my lawyer." *See, e.g.*, App. at 116 ("Mr. Low: Can I have one second to talk to my lawyer?"). In fact, Renner called two witnesses on Low's behalf.

We review de novo a defendant's claim that he was denied his Sixth Amendment right to counsel. *United States v. Goldberg*, 67 F.3d 1092, 1097 (3d Cir. 1995). Application of the facts to the legal principles articulated by Chief Judge McKee demonstrates that Low's Sixth Amendment rights were satisfied.

It is undisputed that Low was warned by the District Court that should he fail to cooperate with his fourth attorney, he would not be appointed a fifth and would have to proceed pro se. The Court's warning, while clearly indicating that Low's right to counsel would be waived by continued misconduct, did not contain all of the details set forth in *Faretta* regarding the risks of proceeding pro se. However, Low had evinced an understanding of the importance of counsel, his rights, and the sentencing process.

He did so first on July 22, 2008, before the motion to withdraw Renner had been granted, when Low stated his understanding that he was at risk of losing three points for acceptance of responsibility at sentencing, Supp. App. at 76,[1] later when he objected to the *Faretta* colloquy, Supp. App. at 95, and thereafter when, in response to the Court's inquiry, he affirmed that he understood the perils of proceeding without counsel and that he felt comfortable navigating the sentencing procedures himself. App. at 106.

Although a waiver of counsel at sentencing must be knowing and intelligent, "the inquiry at sentencing need only be tailored to that proceeding and the consequences that

---

[1] As the majority notes, "we have on occasion looked beyond the District Court's colloquy to determine whether a defendant understood the charges and sentence." *United States v. Jones*, 452 F.3d 223, 232 (3d Cir. 2006). In *United States v. McFadden*, where the defendant had dismissed just two counsel, we looked beyond the court's warning to the advice competent counsel had given because the defendant "was not entitled to employ complaints against counsel as a dilatory tactic." 630 F.2d 963, 972 (3d Cir. 1980).

4

may flow from it.  Therefore, it need not be as exhaustive and searching as a similar inquiry before the conclusion of trial." *Salemo*, 61 F.3d at 219.  Here, the District Court specifically warned Low of the risks of proceeding pro se.

Additionally, Low made extensive use of standby counsel during sentencing, all of which is noted in the transcript.  We have stated that the availability and use of standby counsel is a factor militating against a finding that the Sixth Amendment was violated. *See, e.g.*, *Gov't of Virgin Islands v. James*, 934 F.2d 468, 472-73 (3d Cir. 1991).

Accordingly, I would reject Low's contention that he was deprived of his right to counsel.  The District Court adequately balanced the "defendant's Sixth Amendment right to counsel with [the] district court's legitimate interest in guarding against manipulation and delay." *Goldberg*, 67 F.3d at 1098.  In any event, Renner did in fact act as Low's counsel and Low took full advantage of his services.  I would affirm the judgment of sentence.