# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
                                    )

     v.                     )      ID No. 1801007017
                                    )

MAURICE COOPER      )

Submitted: April 17, 2023
Decided: July 31, 2023
*Corrected:  August 11, 2023

*Upon Defendant Maurice Cooper's Motion for Postconviction Relief*
**DENIED.**

## MEMORANDUM OPINION

Mark A. Denney, Jr. Esquire, Erika Flaschner, Esquire, Deputy Attorneys General, DEPARTMENT OF JUSTICE, 900 North King Street, 4th Floor, Wilmington, Delaware 19801.

Richard Sparaco, Esquire, LAW OFFICE OF RICHARD SPARACO, LLC, 1920 Fairfax Avenue, Cherry Hill, New Jersey 08003 and P.O. Box 371, Lewes, Delaware 19958; Jan A. T. van Amerongen, Jr., Esquire, OFFICE OF CONFLICTS COUNSEL, 900 North King Street, Suite 320, Wilmington, Delaware 19801, Attorneys for Defendant Maurice Cooper.

**WHARTON, J.**

*Punctuation marks and n. 326

# I. INTRODUCTION

Defendant Maurice Cooper ("Cooper") was convicted by a jury of Drug Dealing (Heroin), Aggravated Possession of Heroin, four counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), four counts of Possession of a Firearm by a Person Prohibited ("PFBPP"), and two counts of Possession of Ammunition by a Person Prohibited ("PABPP").[1] For sentencing purposes, the two drug charges merged.[2] The Court sentenced Cooper to unsuspended Level V imprisonment of 15 years on the merged drug charge, five years on each PFDCF charge, and 10 years on each PFBPP charge.[3] The sentences on the PFDCF and PFBPP charges were all minimum mandatory sentences.[4] He was sentenced to probation on the PABPP charges.[5] Cooper's direct appeal was unsuccessful.[6]

On April 7, 2021, Cooper filed a *pro se* Motion for Postconviction Relief ("*pro se* Motion")[7] and request for appointment of counsel. The Court appointed Peter A. Levin, Esquire ("Levin") to represent Cooper, and Levin then submitted an Amended Motion for Post Conviction Relief ("Amended Motion").[8] After

---

[1] *Cooper v. State,* 228 A.2d 399 (Del. 2020).
[2] *Id.* at 407.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.* at 408.
[7] Def.'s *pro se* Mot., D.I. 120.
[8] Def.'s Am. Mot., D.I. 135.

1

Levin discovered that he had a conflict of interest due his representation of a previous client in a related case, Richard Sparaco, Esquire ("Sparaco") was appointed to represent Cooper. Sparaco filed a Supplemental Brief in Support of Motion for Post-Conviction Relief ("Supplemental Brief")[9] and Appendix ("Supplemental Brief Appendix").[10] The State filed its Response in Opposition to Cooper's Amended Motion for Postconviction Relief ("State's Response").[11] On April 17, 2023, the Court held an evidentiary hearing. The Court has carefully considered the parties' submissions as well as the evidence presented at the hearing. For the reasons set forth below, Cooper's Motion is **DENIED**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In 2014, police began receiving tips about large scale distribution of heroin, cocaine, and marijuana taking place in Wilmington.[12] Primarily through informants the police began taking a specific interest in Cooper.[13] For example, based on information obtained from confidential informants, and confirmed through their own investigation, the police sought and obtained search warrants for a business (3607 Downing Drive, Unit 8, Wilmington, Delaware; "Unit 8") and a residential address (2338 West 18th Street, Apartment 1, Wilmington, Delaware;

---

[9] Def.'s Supp. Br., D.I. 154.
[10] Def.'s Supp. Appx., D.I. 155.
[11] State's Resp., D.I. 160.
[12] *Cooper v. State*, 228 A.3d at 401.
[13] *Id.* at 401–02.

2

"Apartment 1").[14] On January 15, 2018, the police executed these warrants, finding several firearms, ammunition, cash, "a large quantity of packaged heroin[,]" and "a large quantity of raw heroin," in addition to finding evidence in Apartment 1 confirming that Cooper occupied it. [15]

The police then obtained two search warrants for Cooper's Instagram account. The first covered November 25, 2017 through January 15, 2018.[16] That search yielded evidence linking Cooper to firearms.[17] The second, for May 18, 2017 through January 15, 2018, "yielded additional incriminating information."[18] Cooper's motions to suppress seized from these warrants were denied.[19]

Cooper was arrested during the January 15, 2018 searches[20] and indicted the following day.[21] He was originally indicted on an array of drug and weapon possession related offenses,[22] but grand juries later returned several superseding indictments adding conspiracy, racketeering, and money laundering charges.[23]

Cooper was initially represented by John Edinger, Esquire ("Edinger"). During that time, the Court received several letters from Cooper asking to proceed

[14] *Id.* at 403.
[15] *Id.*
[16] *Id.*
[17] *Id.* at 403–04.
[18] *Id.* at 404.
[19] *Id.*
[20] *Id.* at 403.
[21] D.I. 1.
[22] *Id.*
[23] D.I. 16; D.I. 25; D.I. 30.

3

*pro se*.[24] Since he was represented, the Court referred all letters to counsel.[25] According to Court records, Edinger did not pursue any of these requests.

On August 6, 2018, Stephanie Volturo, Esquire ("Volturo") of the Office of Conflicts Counsel moved for the admission *pro hac vice* of James Brose, Esquire ("Brose").[26] That motion was granted on August 10, 2018.[27] Brose went to work immediately, within the first month and a half filing a combined Motion to Sever and Motion for Bill of Particulars.[28] Volturo and Brose also filed multiple Motions to Suppress[29] and a Motion to Reveal Identity of Confidential Informant.[30] The motions were ultimately either denied, withdrawn, or rendered moot.[31]

Before the February 25, 2019 commencement of trial, the State entered *nolle prosequis* on several counts in an effort to avoid calling a confidential informant as a witness.[32] On February 19, 2019, Brose informed the Court that Cooper would be pursuing an entrapment defense,[33] claiming that the confidential informant sold

---

[24] *E.g.*, D.I. 7; D.I. 13.
[25] *See* Super. Ct. Crim. R. 47. *E.g.*, D.I. 10; D.I. 12.
[26] D.I. 26.
[27] D.I. 27.
[28] D.I. 31 (September 28, 2018).
[29] *E.g.*, D.I. 47 (Instagram account); D.I. 53 (Cooper's statement).
[30] D.I. 46 (Motion to Suppress Search Warrant and to Reveal Identity of Confidential Informant).
[31] D.I. 55.
[32] D.I. 58; State's Resp., at 24., D.I. 160.
[33] D.I. 59.

him one of the guns for which he was charged.[34]  On February 21, 2019, the parties discussed concerns over Cooper's wearing prison clothes for jury selection,[35] how to handle the person prohibited charges,[36] the overlap between the confidential informant, Instagram communications, and the entrapment defense,[37] and *voir dire* questions.[38]  After Brose discussed the matter with Cooper, the parties stipulated that during the timeframe at issue (January 1, 2015–January 15, 2018), Cooper was a person prohibited from possessing firearms and ammunition.[39]  On February 22, 2019, Brose requested a continuance in order to attempt to recover Cooper's deleted Instagram messages.[40]  The State opposed.[41]

On the morning of trial, Brose made two oral motions; one for a continuance, again hoping for additional time to forensically retrieve Cooper's deleted Instagram messages, and the second for the identity of an informant to

---

[34] *Id.*

[35] *E.g.*, Trial Tr. Feb. 21, 2019, at 2:11–4:2; 43:16–44:4.

[36] *Id.* at 4:7–9:4.

[37] *Id.* at 9:5–34:16. Messages from Cooper's Instagram account were deleted and were not retrievable despite several attempts by the State. Despite "[Cooper] want[ing] to go down with the entrapment defense or not go down at all[,]" the Court made it explicitly clear to Brose that Cooper "needs to go into this decision with both eyes open, full awareness of what the potential consequences of presenting that[.]" *Id.* at 31:16–18; 33:10–13.

[38] *Id.* at 34:17–42:23.

[39] *Id.* at 47:8–49:19; D.I. 61.

[40] D.I. 64.

[41] D.I. 65.

subpoena him/her for trial.[42]  The State opposed the continuance request, claiming that the State did all it could to get the deleted messages, that a prospective witness to the entrapment allegation, Kiarye Braxton ("Braxton"), was available to testify, that its witnesses would be inconvenienced with a rescheduling; and that "it [would be] an affront to judicial economy."[43]  The Court denied the request for a continuance and reserved decision on the informant identification issue.[44]

A jury trial took place from February 25 to 28, 2019.[45]  During trial, the State called numerous witnesses, including multiple law enforcement officers and expert witnesses Rachel Philibert, a forensic chemist with the Delaware Division of Forensic Science,[46] Kira Glass, a latent print examiner with the FBI Laboratory,[47] and Erica Ames, a forensic examiner in the DNA Case Work Unit at the FBI Laboratory.[48]  The jury heard, for example, that Cooper admitted that everything found in Apartment 1 was his,[49] that there is "very strong support that

---

[42] D.I. 69.
[43] Trial Tr. Feb. 25, 2019, at 21:8–24:1.
[44] D.I. 69.
[45] D.I. 69.
[46] Trial Tr. Feb. 25, 2019, at 196–211.
[47] Trial Tr. Feb. 26, 2019, at 43–52.
[48] *Id.* at 55–84.
[49] *E.g.*, Special Agent Haney testified that Cooper stated "[his girlfriend] didn't have anything to do with this. Everything in the house is mine." Trial Tr., Feb. 25, 2019, at 78:22–23; Detective Jeffrey Silvers testified that Cooper stated something along the lines of "[a]nything that's found in here belongs to me. She has nothing to do with it." *Id.* at 107:20–22.

Cooper is a contributor to the Ruger handgun,"[50] and that his middle finger's print was found on magazine paper and tape[51] located "inside of the locked Husky toolbox that contained heroin and the gun at [Unit 8]."[52] The Court denied Cooper's Motion for Judgment of Acquittal, his *pro se* Motion for Dismissal, and his objection to the conspiracy question and charge going back to the jury.[53]

On February 27, 2019, after much discussion between the parties as well as between Cooper and his counsel, Cooper informed the Court that neither Braxton[54] nor he would be testifying.[55] Also, for the first time, the Court was, made aware of Cooper's desire to proceed *pro se*.[56]

On February 28, 2019, Cooper was found guilty of Drug Dealing (Heroin), Aggravated Possession of Heroin, PFDCF (four counts), PFBPP (four counts) and PABPP (two counts).[57] He was found not guilty of Conspiracy to Commit Racketeering and two counts of Receiving a Stolen Firearm.[58] He was sentenced to a total of 75 years of unsuspended imprisonment at Level V.[59]

---

[50] Trial Tr., Feb. 26, 2019, at 69:7–9.
[51] *Id.* at 50:3–52:5.
[52] *Id.* at 53:15–21.
[53] D.I. 69.
[54] Trial Tr., Feb. 27, 2019, Volume I, at 37:1–16.
[55] *Id.* at 39:22–40:1.
[56] *Id.* at 14:11–15:4; 18:9–11. ("THE COURT: I don't have any -- I don't have a copy of that motion. You never brought it to my attention, certainly.")
[57] D.I. 69.
[58] *Id.*
[59] Sentencing Tr., May 31, 2019, 34:5–36:12.

Cooper raised four issues on direct appeal to the Delaware Supreme Court.[60] Cooper claimed that this Court erred in denying his motions to suppress evidence from the Apartment 1, Unit 8, and Instagram searches.[61] He also claimed that his sentence violated the Eighth Amendment's prohibition on cruel and unusual punishment.[62] The Supreme Court "[found] no merit to Cooper's claims and affirm[ed],"[63] finding that "the facts and circumstances set forth in the applications were sufficient to permit the judge issuing the warrants to reasonably find that the items sought would be found in Apartment 1 and Unit 8."[64] The Supreme Court also rejected Cooper's challenge to the Instagram warrants.[65] Finally, it found that the facts of this case, combined with Cooper's criminal history, justified his sentence and "do not create an inference of gross disproportionality to his crimes, they do not violate the Eighth Amendment."[66]

On April 7, 2021, Cooper filed his *pro se* Motion[67] and on April 8, 2021, he filed a Motion for Appointment of Counsel.[68] His request for counsel was granted

---

[60] *Cooper*, 228 A.3d 399.
[61] *Id.* at 401.
[62] *Id.*
[63] *Id.*
[64] *Id.* at 406.
[65] *Id.*
[66] *Id.* at 407–08. The Supreme Court also denied Cooper's Mot. for Rehearing and Reargument. D.I. 135 at 7.
[67] Def.'s *pro se* Mot., D.I. 120.
[68] D.I. 121.

on April 19, 2021.[69]  Levin was assigned to represent him and was admitted *pro hac vice* on January 21, 2022.[70]  After submitting Cooper's Amended Motion, Levin discovered that he had a conflict of interest that disqualified him from continuing to act as counsel for Cooper.[71]  Sparaco then was assigned to replace Levin and was admitted *pro hac vice* on August 18, 2021.[72]  Sparaco filed the Supplemental Brief and Appendix on December 28, 2022.[73]

Prior to submitting his brief and appendix, Sparaco filed a motion to withdraw as counsel.[74]  Cooper filed a Motion[75] and Amended Motion[76] for Disqualification of Counsel, but sought to withdraw them.[77]  This Court ultimately instructed Sparaco to remain on the case and to file his drafted Supplemental Brief.[78]

After considering the parties' submissions, the Court ordered an evidentiary hearing to "address Cooper's allegations of ineffective assistance of counsel against his original counsel and his trial and appellate counsel, including, but not

---

[69] D.I. 125.
[70] D.I. 127.
[71] D.I. 141.
[72] D.I. 145.
[73] Def.'s Supp. Br., D.I. 154; Def.'s Supp. Appx., D.I. 155.
[74] D.I. 150.
[75] D.I. 153.
[76] D.I. 156.
[77] D.I. 157.
[78] D.I. 151; D.I. 158.

limited to, his allegations with respect to *pro se* representation."[79] The hearing was held on April 17, 2023.[80] Cooper was the only witness to testify at the hearing. Neither party chose to call Edinger or Brose, nor were affidavits presented from them by either party.

## III.   THE PARTIES' CONTENTIONS

### A.   Cooper's *Pro Se* Motion.

In his *pro se* Motion Cooper identifies three general grounds for relief: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; and (3) abuse of discretion.[81]   More specifically, he alleges that Edinger was ineffective in: (1) failing to submit numerous *pro se* motions on his behalf after the court failed to honor his request to represent himself; and (2) failed to object to a superseding indictment returned "days before trial and more than 6 months after original indictment, and asserting speedy trial rights."[82]   He alleges that Volturo was ineffective by violating his rights in selecting Brose, an out of state attorney to represent him.[83]   Finally, he alleges Brose was ineffective in failing to (1) "reapply in Supreme Court (separate) to represent [him] on appeal knowing the conflict of interest; (2) move for a *Franks* hearing in connection with the suppression motion,

---

[79] D.I. 164 at ¶4.
[80] D.I. 165.
[81] D.I. 120.
[82] *Id.*
[83] *Id.*

10

knowing that Agent Barnes used false information provided by CS5; (3) "suppress illegal wiretap use by FBI Agent Haney … and GPS used in surveillance in CS5 encounters of affidavits of searches;" (4) "object to Det. Barnes and Special Agent Haney hearsay statements to Guns and Drugs being 'found' in shop;" (5) investigate or call owner of shop to testify that nothing was found in his shop because he was not charged with a crime;" (6) object to Det. Barnes and Special Agent Haney, who were both witnesses, sitting at counsel table during trial; (7) suppress DNA evidence, object to the State's DNA expert's testimony, and use defense DNA expert; (9) object to fingerprint testimony or to retain a defense fingerprint expert; (10) raise a *Brady* violation claim regarding the State withholding Instagram messages, hire a defense expert to retrieve Instagram messages, and object to the introduction of Instagram messages at trial; (11) introduce evidence that the informant sold him the guns, despite raising that defense in his opening statement; (12) investigate before trial and call Braxton as a witness; (13) object to an improper answer to a jury question; (14) object to the racketeering charge "being introduced at trial;" and (15) "object to stipulation of charges (prior) as they were incorrect and proper colloquy was not performed nor no instruction."[84]

The specifics of Cooper's prosecutorial misconduct claim are the State: (1) failed to produce Instagram messages of the informant; (2) "defrauded the Court on

---

[84] *Id.*

11

allegations of [him] being indicted in Feb. of 18 for Racketeering;" (3) continued to talk about money laundering charges in closing argument despite dropping them during trial; (4) continued to pursue Racketeering charges "after he dropped 6 codefendants part of federal trial and vindictively re-indicted [him] back to Racketeering."[85]

Finally, Cooper raises two grounds under his abuse of discretion claim: (1) the Court failed to "separate PFBPP charges and failed to hold a colloquy about [his] prior convictions and not instructing jury about them may or may not accept them;" and (2) the Court violated his constitutional rights in the manner in which it ruled on his motion to disclose the identity of the confidential informant.[86]

**B.      Levin's Amended Motion for Postconviction Relief.**

As directed by the Court, first postconviction counsel Levin filed an Amended Motion on Cooper's behalf on June 14, 2022.[87]   The Amended Motion addresses the three general claims raised by Cooper's *pro se* Motion as well as the specific claims under each. Levin identifies certain issues raised in the *pro se* Motion which, in his view lack merit, but in each such case notes that Cooper disagrees.

---

[85] *Id.*
[86] *Id.*
[87] D.I. 135.

The Amended Motion first addresses 22 ineffective assistance of counsel claims, two of which relate to Edinger and the other 20 to Brose. Claims Levin deems meritorious with regard to Edinger are allegations that he was ineffective in failing to: (1) bring motions on Cooper's behalf to allow him to proceed *pro se*;[88] and (2) assert a speedy trial violation and object to the superseding indictment.[89] Regarding Brose, Levin deems he was ineffective in failing to: (1) challenge the veracity of the affidavits in support of the search warrants and file a *Franks* Motion regarding CS5's false allegations;[90] (2) present an entrapment defense after admitting Cooper's guilt in his opening statement;[91] (3) object to Special Agent Haney's testimony regarding a photograph sent to him by the confidential informant in violation of Cooper's Sixth Amendment confrontation rights;[92] (4) use police reports to impeach officers and the State's forensic chemist expert witness;[93] (5) investigate and call witnesses regarding the drugs and firearms seized during the execution of the search warrant at the shop;[94] (6) object to a stipulation regarding Cooper's prior record and to research his prior convictions adequately;[95]

---

[88] *Id.* at 31-33.
[89] *Id.* at 41-42.
[90] *Id.* at 33-39.
[91] *Id.* at 43-44.
[92] *Id.* at 44-46.
[93] *Id.* at 47-48.
[94] *Id.* at 49-50.
[95] *Id.* at 51.

(7) file for discovery and inspection;[96] (8) object to Instagram photographs and retain and expert;[97] (9) object to the Court's decision regarding the confidential informant's identity;[98] (10) move for a new trial;[99] (11) object to the State's FBI fingerprint expert's report;[100] (12) object to the State's FBI DNA expert's report and testimony;[101] (13) move to suppress DNA samples collected from Cooper;[102] and (14) request a missing witness instruction for an unidentified confidential informant.[103]

Claims raised by Cooper which Levin deems to have no merit, but which Cooper still maintains are meritorious are allegations that Brose was ineffective in failing to: (1) move to suppress the wiretap and GPS surveillance on the basis that they were illegally conducted by federal agents;[104] (2) move to dismiss the indictment on the basis of an illegal arrest and lack of state jurisdiction;[105] (3) seek a DNA expert regarding Cooper's DNA swabs;[106] (4) object to the manner in

---

[96] *Id.* at 52.
[97] *Id.* Levin notes this claim is redundant.
[98] *Id.* at 52-54.
[99] *Id.* at 54-55.
[100] *Id.* at 55-56..
[101] *Id.* at 57-59.
[102] *Id.* at 59-61.
[103] *Id.* at 61-62.
[104] *Id.* at 39-40.
[105] *Id.* at 40-41.
[106] *Id.* at 46-47.

14

which a note sent by the jury during its deliberations was answered;[107] (5) object to and challenge the FBI fingerprint expert witness's report;[108] (6) sequester two witnesses who sat at the State's counsel table during trial;[109] and (7) object to Count I of the verdict form (Conspiracy to Commit Racketeering) and move for a mistrial.[110]

Claims related to prosecutorial misconduct deemed meritorious by Levin are allegations that: (1) the State withheld communications between Cooper and the confidential informant;[111] and (2) the State presented tainted evidence to the jury.[112]

Claims related to prosecutorial misconduct deemed to have no merit by Levin are allegations that the State: (1) interfered with a witness;[113] (2) lied to the jury when Cooper was indicted;[114] (3) *nolle prossed* the money laundering charge but continued to comment on it during closing argument;[115] (4) improperly sent Cooper's discovery to other attorneys and codefendants;[116] and (5) engaged in prosecutorial vindictiveness when it ended the prosecution of five of his

---

[107] *Id.* at 50-51.
[108] *Id.* at 55-56.
[109] *Id.* at 56-57.
[110] *Id.* at 57.
[111] *Id.* at 63.
[112] *Id.* at 65-66.
[113] *Id.* at 63-65.
[114] *Id.* at 66-67.
[115] *Id.* at 67.
[116] *Id.*

15

codefendants who were subsequently tried in federal court, but continued his prosecution in state court.[117]

Claims related to the allegation that the Court abused its discretion deemed meritorious by Levin are that the Court: (1) violated Cooper's Fifth Amendment right to remain silent by ruling he had to testify in order for the Court to order the State to reveal the identity of a confidential informant;[118] and (2) allowed Cooper's codefendants' plea agreements to be admitted into evidence at trial.[119]

Claims related to the allegation that the Court abused its discretion deemed to have no merit by Levin are allegations that the Court: (1) accepted a prior conviction stipulation without holding a colloquy with Cooper and failed to instruct the jury that it could accept the stipulation or not;[120] (2) violated Cooper's rights when it made certain remarks during the testimony of Det. Barnes;[121] (3) Judge Butler improperly ruled on a jury note;[122] and (4) Brose was admitted *pro hac vice* improperly without the Cooper's permission.[123]

C.      **Current Postconviction Counsel's Supplemental Brief.**

---

[117] *Id.* at 67-69.
[118] *Id.* at 69-70.
[119] *Id.* at 71-73.
[120] *Id.* at 69-70.
[121] *Id.* at 73-75.
[122] *Id.* at 75.  Levin notes this claim is redundant.
[123] *Id.* at 75-76.

Current postconviction relief counsel filed his Supplemental Brief and Appendix on December 28, 2022.[124]    The Supplemental Brief contains supplemental legal argument on Cooper's prior ineffective assistance of counsel claims, raises new claims, requests an evidentiary hearing,[125] and re-submits Cooper's prior *pro se* claims as well as those raised in Levin's Amended Motion.[126]

The ineffective assistance of counsel claims raised in the Supplemental Brief are that counsel was ineffective in: (1) failing to comply with Cooper's request to represent himself;[127] (2) conceding guilt but failing to present any defense.[128] (3) failing to ensure that Cooper did not present himself to the jury panel in prison clothes;[129] and (4) failed to subject the State's case to meaningful adversarial testing and was otherwise ineffective.[130]   In particular, this last claims specifies that: (1) trial counsel failed to object to Special Agent Haney's testimony on the ultimate issue of guilt;[131] (2) trial counsel failed to move for a *Franks* hearing;[132] (3) trial counsel failed to object to the Court's decision regarding disclosure of the

---

[124] D.I. 154 (Def.'s Supp. Br); D.I. 155 (Appendix).
[125] The request for an evidentiary hearing is moot, inasmuch as the Court held a hearing on April 17, 2023.
[126] D.I. 154.
[127] *Id*. at 4-11.
[128] *Id.* at 11-14.
[129] *Id.* at 14-18.
[130] *Id.* at 18-29.
[131] *Id.* at 19-21.
[132] *Id*. at 21-23.

confidential informant's identity;[133] (4) appellate counsel failed argue on direct appeal that the codefendant's guilty pleas should not have been admitted into evidence;[134] and (5) both trial and appellate counsel were ineffective in failing to move to dismiss the indictment based on a violation of Cooper's speedy trial rights.[135] Finally, the Supplemental Brief argues that trial counsel was ineffective in failing to call Braxton as a witness despite knowing that Braxton could provide exculpatory testimony.[136]

**D.    The State's Response.**

The State submitted its Response on February 20, 2023.[137] The Response addresses the claims raised by the Supplemental Brief in detail and addresses Cooper's *pro se* claims and the Amended Motion in a more cursory fashion. Regarding the arguments in the Supplemental Brief the State argues that: (1) Cooper is not entitled to relief on his claim that he was denied an opportunity to represent himself because he did not seek to represent himself after Brose began representing him until mid-trial, and then declined to do so when given the opportunity;[138] (2)  trial counsel did not concede guilt and was not ineffective in

---

[133] *Id.* at 23-24.
[134] *Id.* at 24-26.
[135] *Id.* at 26-29.
[136] *Id.* at 29-32.
[137] D.I. 160.
[138] *Id.* at 8-10.

electing not to pursue a baseless entrapment defense;[139] (3) the fact the Cooper appeared in prison clothes temporarily does not entitle him to relief;[140] (4) trial counsel was not ineffective in electing not to make futile or improper objections, pursue a *Franks* hearing or raise arguments on appeal that lacked merit;[141] and (5) trial counsel was not ineffective in failing to call Braxton as a witness in light of Cooper's own desire not to call him.[142] Turning to Cooper's *pro se* Motion and Levin's Amended Motion, the State briefly addresses each claim and characterized them as either redundant or without merit.[143]

## IV. STANDARD OF REVIEW

Rule 61 is the exclusive remedy for those "in custody under a sentence of this court seeking to set aside the judgment of conviction…"[144] This Rule balances finality "against … the important role of the courts in preventing injustice."[145]

Before addressing the merits of a defendant's motion for postconviction relief, the Court must first apply the procedural bars of Superior Court Criminal Rule 61(i).[146] If a procedural bar exists, then the Court will not consider the merits

---

[139] *Id.* at 10-12.
[140] *Id.* at 12-13.
[141] *Id.* at 13-25.
[142] *Id.* at 26-27.
[143] *Id.* at 27-31.
[144] Super. Ct. Crim. R. 61(a)(1).
[145] *Zebroski v. State*, 12 A.3d 1115, 1120 (Del. 2010) (citation omitted).
[146] *Younger v. State,* 580 A.2d 552, 554 (Del. 1990).

of the postconviction claim.[147]  Under Delaware Superior Court Rules of Criminal

Procedure, a motion for postconviction relief can be barred for time limitations,

repetitive motions, procedural defaults, and former adjudications.  A motion

exceeds time limitations if it is filed more than one year after the conviction

becomes final or if it asserts a newly recognized, retroactively applied right more

than one year after it was first recognized.[148]  A second or subsequent motion is

repetitive and therefore barred.[149]  The Court considers a repetitive motion only if

the movant was convicted at trial and the motion pleads with particularity either:

(1) actual innocence;[150] or (2) the application of a newly recognized, retroactively

applied rule of constitutional law rendering the conviction invalid.[151]  Grounds for

relief "not asserted in the proceedings leading to the judgment of conviction" are

barred as procedurally defaulted unless the movant can show "cause for relief" and

"prejudice from [the] violation."[152]  Grounds for relief formerly adjudicated in the

case, including "proceedings leading to the judgment of conviction, in an appeal, in

a post-conviction proceeding, or in a federal habeas corpus hearing" are barred.[153]

---

[147] *Id.*
[148] Super. Ct. Crim. R. 61(i)(1).
[149] Super. Ct. Crim. R. 61(i)(2).
[150] Super. Ct. Crim. R. 61(d)(2)(i).
[151] Super. Ct. Crim. R. 61(d)(2)(ii).
[152] Super. Ct. Crim. R. 61(i)(3).
[153] Super. Ct. Crim. R. 61(i)(4).

Additionally, "[t]his Court will not address claims for post-conviction relief that are conclusory and unsubstantiated."[154]

To successfully bring an ineffective assistance of counsel claim, a claimant must demonstrate: (1) that counsel's performance was deficient; and (2) that the deficiencies prejudiced the claimant by depriving him or her of a fair trial with reliable results.[155] To prove counsel's deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness.[156] Moreover, a defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.[157] "[A] court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[158] A successful Sixth Amendment claim of ineffective assistance of counsel requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[159] An inmate must satisfy the proof requirements of both prongs to succeed on an ineffective assistance of counsel

---

[154] *State v. Guinn,* 2006 WL 2441945, at *4 (Del. Super. Aug 16, 2021). *See also Gattis v. State*, 697 A.2d 1174, 1178-79 (Del. 1997); *Younger,* 580 A.2d at 556; *State v. McNally,* 2011 WL 7144815, at *5 (Del. Super. Nov. 16 2011); *State v. Wright,* 2007 WL 1982834, at *1 n.2 (Del. Super. July 5, 2007).
[155] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).
[156] *Id.* at 667-68.
[157] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).
[158] *Strickland*, 446 U.S. at 689.
[159] *Id.* at 694.

claim. Failure to do so on either prong will doom the claim and the Court need not address the other.[160]

In the appellate context, "[t]he [d]efendant must first show that his counsel was objectively unreasonable in failing to find arguable issues on appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them."[161] Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."[162] Nonetheless, it is "still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent."[163] A defendant faces a tougher burden of "showing that a particular nonfrivolous issue was clearly stronger than issues that counsel did present" where appellate counsel filed a merits brief, than in the case where appellate counsel filed a no merit brief.[164] Further, Cooper must still show prejudice, "That is, [the defendant] must show a

---

[160] *Strickland,* 466 U.S. at 697; *Ploof v. State,* 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant.").
[161] *Neal v. State,* 80 A.3d 935, 946 (Del. 2013) (quoting *Smith v. Robbins,* 528 U.S. 259, 285 (2000)).
[162] *Id.* (citing *Smith*, 528 U.S. at 288).
[163] *Id.*
[164] *Id.*

22

reasonable probability that, but for his counsel's unreasonable failure [to raise a clearly stronger issue], he would have prevailed on his appeal."[165]

## V.    DISCUSSION

This motion is a timely first motion under Rule 61. Cooper claims multiple instances of ineffective assistance of counsel, prosecutorial misconduct, and judicial abuse of discretion. In his *pro se* Motion, he states that his prosecutorial misconduct and judicial abuse of discretion claims are not procedurally barred because they could not or have not been raised until now.[166] Levin's Amended Motion merely asserts, without elaboration, that the prosecutorial misconduct and judicial abuse of discretion claims are not barred because they were not raised previously.[167] The Amended Motion does not address the procedural default bar of Rule 61(i)(3). Sparaco's Supplemental Brief does not address any of the bars to relief of Rule 61(i) at all.[168] The State concedes that Cooper's claims of ineffectiveness are not procedurally barred,[169] but that "Cooper's substantive claims are procedurally barred under Rule 61(i)(3)."[170]

The bar to relief of Rule 61(i)(3) may be avoided if the movant shows: "(A) Cause for relief from the procedural default and (B) Prejudice from violation of the

---

[165] *Id.* at 947 (quoting *Smith,* 528 U.S. 285).
[166] D.I. 120.
[167] D.I. 135 at 63, 69.
[168] D.I. 154.
[169] State's Resp., D.I. 160, at n. 6 and associated text.
[170] *Id.* at 4.

23

movant's rights."[171]  Further, the bar is inapplicable to a claim that satisfies the pleading requirements of Rule 61(d)(2)(i) or (2)(ii).[172]  Rule 61(d)(2)(i) speaks to pleading actual innocence in fact claims.  No such claim is pled here.  Rule 61(d)(2)(ii) requires a movant to plead "with particularity that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction … invalid."[173]  Cooper has not met this pleading requirement either.  Cooper admits that he failed to raise his complaints of prosecutorial misconduct and judicial abuse of discretion on direct appeal, "as required by the rules of this court[.]"[174]  He attributes this failure to counsel's ineffectiveness.[175]  To the extent Cooper has shown cause for his failure to raise these claims before by alleging ineffective assistance of counsel, the Court assesses those claims through that lens.

The Court first addresses the claims as set out in the Supplemental Brief submitted by current postconviction counsel.  Then, the Court will address the claims set out in Cooper's *pro se* motion and Levin's Amended Motion which are incorporated in the Supplemental Brief by reference.

---

[171] Super. Ct. Crim. R. 61(i)(3).
[172] Super. Ct. Crim. R. 61(i)(5).
[173] Super. Ct. Crim. R. 61(d)(2)(ii).
[174] Def.'s *pro se* Mot., D.I. 120.
[175] *Id.*

## A. Counsel's Failure to Submit Cooper's Requests to Proceed *Pro Se* does not Entitle Cooper to Postconviction Relief.

Cooper argues that "he was deprived of effective assistance of counsel when Attorney John S. Edinger failed on numerous occasions to properly file [his] motions to proceed pro se, resulting in [him] being unsatisfactorily represented."[176] Cooper claims that "[h]ad Attorney Edinger properly filed [his] motion to proceed pro se, [he] would have exercised his constitutional right to proceed pro se."[177] Cooper ultimately claims that due to his "intimate[] familiar[ity] with the facts of the case, … the result would probably have been different had that motion be[en] presented and granted by the court."[178]

The State presented several counterarguments. First, it argues that Cooper's requests to proceed *pro se* were mooted once new counsel, Brose, was appointed,[179] points out that no requests were made during Brose's representation,[180] that Cooper never voiced displeasure with Brose's representation,[181] and that despite the Court's "willingness to engage in a colloquy

---

[176] Def.'s Am. Mot., at 31, D.I. 135.
[177] *Id.* at 33.
[178] Def.'s Supp. Br., at 11, DI 154.
[179] State's Resp., at 10, D.I. 160.
[180] *Id.* at 8–9.
[181] *Id.* at 9.

with Cooper to consider whether he wished to proceed *pro se*," it was Cooper who declined.[182]

No attempt has been made to explain Edinger's failure to submit Cooper's requests to proceed *pro se* to the Court. Accordingly, Cooper has satisfied *Strickland's* performance prong. However, the Court finds that Cooper has not established that there is a substantial likelihood that, had the Court had the opportunity to conduct the appropriate colloquy with him, he would have elected to represent himself.

In *Faretta v. California*, the United States Supreme Court held that a defendant in a State criminal proceeding may proceed *pro se* if the defendant knowingly, intelligently, and voluntarily waives the right to counsel.[183] Once a defendant clearly and unequivocally asserts his right to self-representation, the trial court must proceed with a hearing to make that determination.[184] Waiver of the right to counsel "depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the

---

[182] *Id.* (citations omitted).

[183] *Faretta v. California,* 422 U.S. 806, 835 (1975).

[184] *Morrison v. State,* 135 A.3d 69, 73 (Del. 2016) (citing *Faretta,* 422 U.S. 826-32; *Smith v. State*, 996 A.2d 786 (Del. 2010); *Briscoe v. State*, 606 A.2d 103(Del. 1992)).

26

accused.'"[185]  The trial judge must "make a thorough inquiry and ... take all steps

necessary to insure the fullest protection of this constitutional right."[186]

In *United State v. Welty,* the Third Circuit held that "at a minimum, to be

valid, a [defendant's] waiver must be made with an apprehension of the nature of

the charges, the statutory offenses included within them, the range of allowable

punishments thereunder, possible defenses to the charges and circumstances in

mitigation and all other facts essential to a broad understanding of the whole

matter."[187]  The Third Circuit further noted that "[a] judge can make certain that an

accused's professed waiver of counsel is understandingly and wisely made only

form a penetrating and comprehensive examination of all the circumstances, and

only after bringing home to the defendant the perils he faces in dispensing with

legal representation."[188]  The Third Circuit then enunciated guidelines for a trial

judge to use in determining whether a defendant is knowingly and intelligently

waiving the Sixth Amendment right to counsel. The trial judge should advise the

defendant, for example:

---

[185] *Id.* (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938))).
[186] *Id.* (quoting *United states v. Salemo,* 61 F.3d 214, 219 (3d. Cir. 1995)).
[187] *United States v. Welty,* 674 F.2d  185, 189 (3d. Cir. 1982).
[188] *Id.*

(1) that the defendant will have to conduct his defense in accordance with the rules of evidence and criminal procedure, rules with which he may not be familiar;

(2) that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law;

(3) that the effectiveness of his defense may well be diminished by his dual role as attorney and accused;

(4) the nature of the charges;

(5) the statutory offenses included within them;

(6) the range of allowable punishments thereunder;

(7) possible defenses to the charges and circumstances in mitigation thereof; and

(8) all other facts essential to a broad understanding of the whole matter.[189]

The Delaware Supreme Court has adopted the *Welty* guidelines.[190]

After corresponding with the Court while Edinger represented him, Cooper did not bring his desire to represent himself to Brose's attention or to the Court's attention until the State had presented its case at trial. Cooper could have raised the issue with the Court during the suppression hearing he attended, but did not.[191]

---

[189] *Id.*

[190] *Briscoe,* 606 A.2d at 106-07.

[191] D.I. 55.

He could have raised the issue prior to jury selection, which, as the State notes occurred on a different date than the start of trial, but did not.[192] In fact, it appears that Cooper was cooperating with Brose.  In a letter to Brose dated November 20, 2018, Cooper offers his thoughts on severance and other issues.[193]  He concludes the letter by saying, "This is my last request also to review evidence and I would like 'all' my reports by the State *or* I would like to represent myself…"[194]  The conditional nature of this statement certainly implies that Cooper was content to be represented by Brose

In addition to Cooper's failure to press the issue during Brose's representation of him, Cooper's conduct leads the Court to believe that he would not have proceeded *pro se* if given the opportunity.  First, after the Court was made aware of Cooper's professed desire to proceed *pro se*, it endeavored to comply with its obligation to conduct a hearing – a hearing which potentially would have resulted in Cooper representing himself for the balance of his trial.[195]  Cooper,

---

[192] State's Resp., at 9, D.I. 160.

[193] Hg., Apr. 17, 2023, Def. Ex. 2.

[194] *Id.* (emphasis added).

[195] Trial Tr., Feb. 27, 2019, Volume I, at 21:3–18 (emphasis added).
THE COURT: … So my question to you today is: How do you want to proceed?
THE DEFENDANT: How do you mean how do we want to proceed? You said I can't [proceed *pro se*], so we are here.
THE COURT: Well, if you want to finish the trial, *I will talk to you about that*.
THE DEFENDANT: Well, I would proceed *pro se* if I could start all over

29

however, declined the Court's offer to discuss the issue.[196]  Next, after trial, but before sentencing, Cooper moved to proceed *pro se*.[197]  After some discussion with the Court prior to sentencing, Cooper withdrew that motion.[198]

After his direct appeal was decided, Cooper sought the assistance of counsel in pursuing this postconviction relief motion.[199]  Levin was appointed for that purpose.[200]  Cooper then moved to disqualify Levin based on a conflict of interest due to Levin's representation of a client involved in one of Cooper's federal matters.[201]  Levin responded to the motion agreeing that, after investigating the alleged conflict, he was conflicted.[202]  Cooper had an apparent change of heart and sought to abandon his disqualification motion.[203]  Levin responded that, in his

---

again.
THE COURT: You can't.
THE DEFENDANT: Okay. Well, we have to go with Mr. Brose then. I don't want to, but we have to. He started the case. He might as well finish it.

[196] *Id.* Cooper claims confusion as to what exactly the Court was offering. The Court disagrees. The record is abundantly clear that it was offering Cooper the option to proceed *pro se* for the remainder of trial. *Id.*

[197] D.I. 81.

[198] D.I. 84.

[199] Mot. for Appointment of Counsel, D.I. 121.

[200] D.I. 127.

[201] D.I. 132.

[202] D.I. 136.

[203] D.I. 137.

opinion, the conflict was one which could not be waived.[204]  Ultimately, despite

Cooper's vacillation, the Court granted Cooper's motion to disqualify Levin.[205]

After Levin's departure, current counsel, Sparaco, was appointed to

represent Cooper.[206]  While all seems well with that relationship now, it did have

its moments in the past.  On December 2, 2022, Sparaco moved to withdraw as

counsel.[207]  That motion recites Cooper's dissatisfaction with Sparaco's proposed

supplemental amended postconviction relief motion expressed to Sparaco, his

desire to represent himself expressed to conflicts counsel, and his recantation of

that desire expressed to Sparaco. [208]  As a result, Sparaco's motion to withdraw

requested that the Court hold a *Faretta* hearing.[209]  The Court held a hearing on the

motion to withdraw and denied it.[210]  After the hearing, Cooper filed  a Motion for

Disqualification of Counsel/Motion to Stay[211] and an amendment to that motion.[212]

Finally, Cooper wrote to the Court on February 2, 2023 withdrawing both the

motion for disqualification and the amended motion for disqualification.[213]  He

wrote, "On 12/12/2022 a hearing (Motion to Withdraw by Richard Sparaco) was

---

[204] D.I. 138.
[205] D.I. 141.
[206] D.I. 146.
[207] D.I. 150.
[208] *Id.*
[209] *Id.*
[210] D.I. 151.
[211] D.I. 153.
[212] Def.'s Amend. Mot. for Disqualification of Counsel/Mot. to Stay, D.I. 156.
[213] D.I. 157.

31

conducted before Your Honor and a lot of my allegations in my motion that's before you were heard at that hearing which Your Honor denied. I apologize for any inconvenience and I seek to withdraw mention motions. Thank You!"[214]

The Court finds it probable that had the Court conducted the *Welty* inquiry, and brought home to Cooper "the perils he face[d] in dispensing with legal representation" as required by *Welty*, he would not have persisted in seeking to represent himself. Those perils include that Cooper: (1) would have to conduct his defense in accordance with the rules of evidence and criminal procedure; (2) may be hampered by his lack of knowledge of the law; and (3) may have the effectiveness of his defense diminished by his dual role as attorney and defendant.[215] Given Cooper's oft expressed dissatisfaction with his out of state attorneys' purported unfamiliarity with Delaware law and procedure,[216] it is doubtful Cooper would have been willing to undertake self-representation with even less familiarity with Delaware law and procedure than his appointed counsel. Other disabilities of which the Court would have advised Cooper are the inherent difficulties in litigating while incarcerated, such as limited access to a law library and little to no investigative resources.

---

[214] *Id.*

[215] *Welty,* 674 F.2d at 189.

[216] *See, e.g.,* Def.'s Resp. to Mot. to Withdraw as Counsel for Def., D.I. 152.

In its many interactions with Cooper, the Court found him to be an obviously intelligent man. Thus, had the Court conducted a *Welty* inquiry, Cooper would have recognized the wisdom of being represented by counsel and the perils of self-representation. The Court is convinced that he would have chosen to be represented by counsel.[217] After carefully reviewing the record and considering the Court's extensive personal interactions with Cooper, it is clear to the Court that he has established a pattern of occasionally raising the specter *pro se* representation, but, when confronted with the reality of that undertaking, exercises good judgment and backs away. Accordingly, based on what Cooper said, did, and did not do, the Court finds that Cooper has failed to meet his burden of showing there is a reasonable probability that, but for Edinger's failure to bring his *pro se* requests to the attention of the Court, Cooper would have chosen to represent himself.

Additionally, the Court finds that Cooper abandoned his attempts to represent himself after Edinger was no longer his attorney until the State concluded its case at trial. The genesis of Cooper's initial request to represent himself was his dissatisfaction with Edinger's representation – "I hold Mr. Edinger to be incompetent to represent me in this matter and I respectfully ask the Court that I be

---

[217] The Court discounts Cooper's testimony to the contrary at the hearing on this motion as self-serving. At that same hearing, he conceded that if given a new trial he may not actually proceed *pro se*. Specifically, and in response to the Court's direct inquiry into what he would do should it grant a new trial, Cooper stated that he would look into retaining private counsel, one who would align with his objectives.

33

allowed to proceed *pro se*."[218]  Cooper's correspondence to the Court seeking to represent himself ceased when Edinger left and Brose entered.  In fact, Cooper never asked Brose to raise the issue with the Court or advise him that he wanted to proceed *pro se*.[219]  As noted, if Cooper truly wanted to represent himself, he had ample opportunity to raise the issue directly with the Court prior to trial, but never did. The Court concludes that Cooper abandoned his attempt to represent himself at the time Edinger ceased representing him because the reason he wanted to do so no longer existed.

**B. Counsel's Discussion of the Entrapment Defense During Opening Statements does not Entitle Cooper to Postconviction Relief.**

Cooper contends that despite conceding factual guilt in opening statement, Brose failed to put on an entrapment defense.[220]  He claims this was a serious error because Brose was obligated to abide by Cooper's objective "to maintain innocence of the charged criminal acts and pursue an acquittal[.]"[221] As such, he claims that this failure resulted in "[him being] irreparably prejudiced[,]" justifying relief.[222]

---

[218] D.I. 7.
[219] Trial. Tr., Feb. 27, 2019, Volume I, at 24:12-17.
    MR. BROSE:  And one more thing, Your Honor, for the record, Mr. Cooper has never indicated to me – he has been upset with my service from time to time.  He has never indicated to me that he wanted to proceed *pro se* or I should put forward a motion *pro se*.
[220] Def.'s Am. Mot., D.I. 135, at 43; Def.'s Supp. Br., at 11–12, D.I. 154.
[221] Def.'s Supp. Br., at 12, D.I. 154.
[222] Def.'s Am. Mot., at 44, D.I. 135.

The State counters that "Cooper's insistence that he was entrapped … is pure fiction[,]"[223] and though the defense was ultimately abandoned, he benefitted from counsel putting the idea in the jurors' minds.[224] Prejudice, therefore, cannot exist. It also emphasizes that in addition to entrapment being "thoroughly litigated pre-trial,"[225] the Court also engaged in a colloquy with Cooper informing him of the Pandora's Box this defense risked opening, including his assuming a burden that he would not otherwise have, and potentially opening the door to State's rebuttal. [226]

As pointed out by the State, "[t]rial counsel was not ineffective because Cooper wisely abandoned this strategy during trial[.]"[227] Trials are fluid, so while Cooper initially "want[ed] to go down with the entrapment defense or not go down at all,"[228] this evidently changed during the course of trial. Cooper chose not to call co-defendant Braxton.,[229] a figure he claimed was willing and able to corroborate his entrapment defense and who also exercised his right not to

---

[223] State's Resp., at 11, D.I. 160.
[224] *Id.*
[225] *Id.* at 10 (citing D.I. 60).
[226] *Id.* at 10–12 (citing Trial Tr., Feb. 27, 2019, Volume I, at 25:13–26:12).
[227] *Id.*
[228] Trial Tr., Feb. 21, 2019, at 31:16–18.
[229] Trial Tr., Feb. 27, 2019, Volume I, at 37:1–16.

testify.[230] Cooper cannot now claim prejudice from his own decisions which were all made after consultation with counsel.

Second, the jury was instructed that it must reach its verdict "based solely and exclusively on the evidence in the case[.]"[231] and to not consider the attorneys' comments as evidence.[232] There is no reason to believe that the jury was influenced by comments of counsel that were not evidence.[233] Cooper, therefore, has not established prejudice because there is no reasonable probability that the result of his trial would have been different.

## C. Cooper's Decision to Remain in Prison Clothes During Jury Selection does not Entitle Him to Postconviction Relief.

Cooper argues that "trial counsel had an obligation to advise him of the clearly negative inferences [being in prison clothing] would present to the jury and the degree of prejudice that would fall upon the defendant, despite his concession."[234] In support of his argument, Cooper points to *Estelle v. Williams*[235]

---

[230] *Id.* at 39:22–40:1.

[231] Trial Tr., Feb. 27, 2019, Volume I, at 105:2–3.

[232] *Id.* at 159:1–4 ("[w]hile it is very important that you listen to and consider what the attorneys say during the trial, what they say is not evidence."); *id.* at 160:23–161:2 ("[s]tatements and arguments of counsel are not evidence in the case, unless made as an admission or stipulation of fact.")

[233] "Juries are presumed to follow the court's instruction." *Phillips v. State*, 154 A.3d 1146, 1157 (Del. 2017).

[234] Def.'s Supp. Br., at 15, D.I. 154.

[235] 425 U.S. 501 (1976).

and *McGlotten v. State*.[236]  He emphasizes *Estelle*'s prohibition on compelling a defendant to appear in prison clothing (while conceding that the Supreme Court of the United States denied relief on the basis of the defendant failing to object)[237] and *McGlotten*'s statement that "counsel should have advised McGlotten to wear civilian clothing if he could obtain it…"[238]  Cooper also claims that counsel erred in declining the Court's offer to instruct the jury not to consider his clothing in determining his guilt.[239]

The State responds that Cooper, after consulting with counsel, elected to forego a jury instruction on this exact issue, hoping to avoid bringing more attention to the issue. [240]  It also emphasizes that the Court instructed the jury on the presumption of innocence with the understanding that "[j]uries … follow the court's instruction."[241]  For the State, a temporary exposure to the jury in prison clothes does not entitle Cooper to postconviction relief.[242]

Once the Court became aware of Cooper wearing prison clothes, not only did it suggest to counsel that he could go to Defense Services to get street

---

[236] 26 A.3d 214 (Del. 2011) (TABLE).
[237] Def.'s Supp. Br., D.I. 154 at 16–17 (citing *Estelle*, 425 U.S. at 512–13)
[238] *Id.* at 17 (*citing McGlotten*, 26 A.3d).
[239] *Id.* at 17–18 (citation omitted).
[240] State's Resp., at 12-13 (*quoting* Trial Tr., Feb. 21, 2019, at 74:4–5; "[w]e prefer not to have the question asked."), D.I. 160.
[241] *Id.* at 13 (*quoting Phillips v. State*, 154 A.3d 1146, 1157 (Del. 2017)).
[242] *Id.*

clothes,[243] it also told counsel to confirm how Cooper wanted to proceed.[244]

Despite these attempted safeguards, Cooper refused Defense Service's clothing[245] and informed the Court that he did not want to wear street clothes despite their availability.[246] The Court is not in the business of forcing street clothing on defendants and it properly instructed the jury on its duty to return verdicts solely on the evidence presented[247] and on the presumption of innocence.[248]

Cooper's decision to wear prison clothing during jury selection was voluntary and free of any *Estelle*-like compulsion. Any potential prejudice that his

---

[243] Trial Tr. Feb. 21, 2019, at 2:19–4:2.

[244] *Id.* at 71:23–72:14.

> THE COURT: The whole concept of people dressed in prison clothes sort of begs the obvious because you have two correctional officers standing behind moving with him wherever he goes if he were to testify.
> It is pretty obvious he is incarcerated in any case where a defendant is incarcerated.
> The point is it seems to me to be a minor one, but there we do have this case law that says we have to be solicitous of defendant's desire in that area. So,
> Mr. Brose, when we go back in the courtroom and if you can just talk, ask him briefly that question.
> BROSE: Okay.

[245] *Id.* at 45:14–18.

[246] *Id.* at 45:21–46:2.

> THE DEFENDANT: Yes, Your Honor. [Brose is] absolutely right [that Cooper preferred to wear prison clothes]. Matter of fact, I didn't ask him to contact family members or anything. I let the jurors see me like this. This is what it is. This is me. *Id.* at 46:20–23.
> THE COURT: It's okay with you to go ahead and pick a jury with you dressed
> in those [prison] clothes?
> THE DEFENDANT: Yes.

[247] Trial Tr., Feb. 27, 2019, Volume I, at 105:2–3.

[248] *Id.* at 156:3–5.

decision caused was cured with the Court's jury instructions.[249] The Court has no reason to believe that Brose did not follow its instruction to solicit Cooper's desires in this area[250] before choosing to forego an instruction.[251] Nevertheless, Brose's decision to forego an instruction in order not to call further attention to Cooper's clothing falls well within *Strickland's* standard of objectively reasonable professional assistance. In considering all the above, the Court will not disrupt the jury's verdicts because Cooper now regrets his choice of clothing.

**D. None of Cooper's Allegations Concerning Counsel's Approach to Meaningfully Testing the State's Case and Safeguarding Cooper's Sixth and Fourteenth Amendment Rights Entitle Him to Postconviction Relief.**

Cooper alleges five ways in which counsel "failed to subject the State's case to meaningful adversarial testing and was otherwise ineffective in violation of defendant's Sixth and Fourteenth Amendment rights."[252] He contends that Brose failed to: (1) object to Special Agent Haney testifying on the ultimate issue of

---

[249] "Juries are presumed to follow the court's instruction." *Phillips*, 154 A.3d at 1157.

[250] *See* Trial Tr. Feb. 21, 2019, at 72:9–19.

> THE COURT: … there we do have this case law that says we have to be solicitous of defendant's desire in [terms of clothing]. So, Mr. Brose, when we go back in the courtroom and if you can just talk, ask him briefly that question.
> MR. BROSE: Okay.
> THE COURT: And let me know what his response is, and we'll take it from there.
> MR. BROSE: All right.

[251] *Id.* at 74:4–5.

[252] Def.'s Supp. Br., at 18, D.I. 154.

Cooper's involvement in the drug trade organization;[253] (2) move for a *Franks* Hearing;[254] (3) to safeguard his Fifth Amendment right to remain silent by not objecting to the Court's ruling on disclosing the confidential informant's identity;[255] (4) raise on appeal the issue of the admission in evidence of codefendants' pleas;[256] and (5) raise at trial and on direct appeal the issue of the violation of Cooper's right to a speedy trial.[257] The State denies each allegation.[258]

**1. Ultimate Issue.**

Cooper claims that Brose was ineffective when he failed to object to Special Agent Haney discussing Cooper's alleged role in the drug trade organization.[259] Cooper claims that Special Agent Haney, testifying as a lay witness, was not qualified to present his opinion on the ultimate issue under Delaware Rules of Evidence 602 and 701.[260] He claims that this improper testimony "certainly had the capability of swaying the jury in favor of the State and the result would have been different had this evidence not been allowed."[261]

---

[253] *Id.* at 19–21.
[254] *Id.* at 21–23.
[255] *Id.* at 23–24.
[256] *Id.* at 24–26.
[257] *Id.* at 26–29.
[258] State's Resp., at 13–25, D.I. 160.
[259] Def.'s Supp. Br., at 19, D.I. 154.
[260] *Id.* at 19–21.
[261] *Id.* at 21.

The State answers that Special Agent Haney was testifying as an expert and that counsel was informed of this designation in advance of trial.[262] It also notes that this argument "should be considered moot" because Cooper was acquitted of Conspiracy to Commit Criminal Racketeering, the crime which Special Agent Haney had been discussing.[263]

This claim fails both prongs of *Strickland.* Special Agent Haney's testimony was not objectionable as improper lay testimony on the ultimate issue since he was a designated expert. Thus, Brose's failure to object did not demonstrate performance deficiency. Further, Cooper was acquitted on the charge to which Special Agent Haney's opinion related. Therefore, Cooper suffered no prejudice.

### 2. *Franks* **Hearing.**

Referencing Cooper's Certification in Support of Postconviction Relief and Levin's Amended Motion, Cooper's Supplemental Brief contends that Brose was ineffective in failing to request a *Franks* hearing.[264] Under *Franks v. Delaware*, a defendant may request such a hearing in cases of alleged falsehoods used by law enforcement for establishing probable cause.[265] Similarly, a defendant may request

---

[262] State's Resp., at 14, D.I. 160.
[263] *Id.*
[264] Def.'s Supp. Br. at 21-23, D.I. 154.
[265] *Franks v. Delaware*, 438 U.S. 154 (1978).

what is known as a "reverse *Franks* hearing" where the police deliberately or recklessly omit information material to determining probable cause.[266]

Levin's Amended Motion identifies certain statements or information in specific paragraphs of identical probable cause affidavits in support of search warrants for Unit 8 and Apartment 1 that Cooper alleges contain false information.[267] The State addresses each claimed falsehood or omission and argues that "[c]learly, all of Cooper's attempts to undermine the confidential informant and the warrant would have failed. Trial Counsel cannot be deemed ineffective for failing to bring a *Franks* motion that would have lost." [268]

The Court agrees with the State. After carefully reviewing the claimed falsehoods or omissions, the Court finds that they either were not false and/or did not affect the determination of probable cause. In paragraph 18 of the affidavit Cooper challenges the statement that Special Agent Haney was contacted by CS5 in December and that CS5 advised that the "shop was somewhere along the Governor Printz Boulevard."[269] Neither of the challenged statements is false, and both are *de minimus*. The State has submitted documentation that Special Agent Haney was contacted by CS5 in December 2017.[270] Further, the shop at Unit 8 on

[266] *Sisson v. State,* 903 A.2d 288, 296 (Del. 2006).
[267] Def.'s Am. Mot., at 34-39, D.I. 135.
[268] State's Resp., at 18– 19; 23-24, D.I. 160.
[269] Def.'s Am. Mot., at 34, D.I. 135.
[270] State's Resp, Ex. D, D.I. 160.

Downing Drive is indeed "off of" Northeast Boulevard which becomes Governor Printz Boulevard once it leaves the City of Wilmington.

Cooper alleges paragraph 25 is misleading in that it states that Special Agent Haney met with CS5 but failed to mention that Officer Mark Hogate was present.[271] He also claims that Special Agent Haney illegally place a wire on CS5 to allow him to illegally record his conversation with Cooper. Officer Hogate's presence or absence at the meeting is irrelevant to a determination of probable cause. The State explains that CS5 consented to the recording, FBI approval had been obtained, and Delaware is a "one-party consent" state.[272] Cooper cites nothing to the contrary to establish the recording was illegal.

Cooper alleges that paragraph 26 contains numerous false statements, mostly involving surveillance of him.[273] The State provides detailed rejoinders to each claimed falsity. Cooper surmises that law enforcement employed illegal GPS monitoring in conducting its surveillance.[274] However, the State describes how that surveillance was conducted without GPS by using various police officers as well as a helicopter.[275] It is plain from the State's submission that had a *Franks*

---

[271] Def.'s Amend. Mot., at 35, D.I. 135.
[272] State's Resp. at 18, D.I. 160.
[273] Def.'s Am. Mot. at 35-37, D.I. 135.
[274] *Id.*
[275] State's resp., at 18-20, D.I. 160.

hearing been held, the State would have been able to refute all of Cooper's challenges to the contents of paragraph 26.

Finally, Cooper alleges that paragraph 28 contains false information concerning an undercover officer's observation of him purchasing gun cleaning equipment at a Walmart store.[276] Specifically, he claims that this information was unknowable to the affiant when he applied for the search warrants and is inconsistent with the surveillance log.[277] The State responds with the simple explanation that Cooper was observed making the purchase by an undercover officer who called the affiant with his observation.[278] The affiant then included the information in the affidavit.[279] Again, the Court finds no reason to believe that this claim would have succeeded at a *Franks* hearing.

The Court finds further support for its finding that a *Franks* hearing would have been fruitless in *Cooper v. State*.[280] Specifically, as part of its analysis, the Delaware Supreme Court considered CS5's reliability and the extent to which police investigations corroborated his claims.[281] The Court ultimately found that "the information provided by CS5 was substantially corroborated by independent

---

[276] Def.'s Am. Mot., at 37-39.
[277] *Id.* at 38.
[278] State's Resp., at 20-21.
[279] *Id.*
[280] *Cooper,* 228 A.3d 399.
[281] *Id.* at 405.

44

police surveillance and information."[282] It also found that the issuing judge was justified in finding CS5 (and his/her supplied information) to be reliable.[283]

The Court finds that Brose was not ineffective in failing to request a *Franks* hearing. There is no reasonable probability that had a *Franks* hearing been held, and all of Cooper's allegations fully litigated, that the hearing would have resulted in the suppression of evidence seized from the execution of the search warrants.

### 3. Fifth Amendment and Disclosure of Confidential Informant's Identity.

Cooper argues that Brose was ineffective for failing to object to the Court's direction that Cooper either must testify or otherwise present an entrapment defense before it would order disclosure of the confidential informant's identity.[284] He claims that D.R.E. 509's shield on disclosure does not apply in this case because Cooper was pursuing an entrapment defense, claiming that the confidential informant's involvement in the controlled buy made him/her "an actual party to the illegal transaction."[285]

The State responds that "[Cooper's] argument mischaracterizes the record[,]" emphasizing that counsel did file to reveal the confidential informant's

---

[282] *Id.*
[283] *Id.*
[284] Def.'s Am. Mot., at 52–54, D.I. 135; Def.'s Supp. Br., at 23–24, D.I. 154.
[285] Def.'s Am. Mot., at 53, D.I. 135. *See State v. Flowers*, 316 A.2d 563, 567 (Del. Super. 1973); *Butcher v. State*, 906 A.2d 798, 802–03 (Del. 2006).

identity.[286]  It claims that the confidential informant's role changed after it dropped all of the charges in which the informant made controlled purchases from Cooper, shifting from being a participant in the crime to only helping the State establish probable cause for a search.[287]  The State argues that the Court followed appropriate disclosure protocols and, after a "thorough colloquy on the question of testifying in his own defense,"  Cooper himself decided that he would not testify.[288]

The Court did not prevent Cooper from testifying, nor did it prevent him from presenting an entrapment defense.  It merely conditioned disclosure of the informants identity on presenting an entrapment defense by either testifying "__or__ somehow else present[ing] an entrapment defense."[289]  Cooper's invocation of the entrapment defense in opening, without supporting it through the presentation of evidence, was insufficient to trigger disclosure.  Simply put, Cooper never satisfied any of the "couple of contingencies" the Court set for disclosure to be triggered.[290] He never presented an entrapment defense, either by testifying himself or otherwise offering any evidence to support such a defense.  Further, the confidential informant was not a party to any of the illegal acts with which Cooper

---

[286] State's Resp., at 24 (*citing* D.I. 46), D.I. 160.
[287] *Id.*
[288] *Id.*
[289] Trial Tr., Feb. 25, 2019, at 36:20–22 (emphasis added).
[290] *See id.* at 37:5–7.

was charged.  The informant was used merely to establish probable cause for search warrants.  In that role disclosure is not triggered under *Flowers*.

**4. Failure to Appeal Admission of Codefendants' Plea Agreements.**

Relying on *Allen v. State*,[291] Cooper argues that trial counsel was ineffective in not objecting to the lack of a jury instruction circumscribing the purposes for which the jury could consider the pleas and that appellate counsel was ineffective in failing to raise this issue on direct appeal.[292]  He argues that due to these failures, Cooper "was denied the right to a fair trial, the conviction and sentences should be reversed, and the matter remanded for a new trial."[293]

The State counters that this matter was not only thoroughly discussed before presentation to the jury,[294] but that the Court also "carefully limited the use of the plea agreements by codefendants for a proper purpose – to establish predicate acts of the criminal enterprise that were not acts by Cooper."[295]  In considering the outcome of the trial, the State also argues that the matter became moot because Cooper was acquitted of the conspiracy to commit racketeering charge, negating any prejudice argument.[296]

---

[291] 878 A.2d 447 (Del. 2005).
[292] Def.'s Supp. Br., at 24–26, .D.I. 154.
[293] *Id.* at 26.
[294] State's Resp., D.I. 160, at 24 (citing Trial Tr., Feb. 26, 2019, at 98:10–131:12).
[295] *Id.* at 25; Trial Tr., Feb. 26, 2019, at 199:8–201:6.
[296] State's Resp., at 25, D.I. 160.

The State is correct. Brose voiced concern about the pleas' admission,[297] resulting in several discussions on this exact issue.[298] After making editing recommendations to the State's proposed limiting instruction,[299] Brose was satisfied with the instruction.[300] In the event, the Court gave a limiting instruction directing the jury to consider the plea agreements only in connection with the State's attempt to prove the predicate acts necessary to establish a criminal enterprise.[301] It also cautioned the jury that the fact that some individuals had entered into plea agreements was not evidence that Cooper committed any of the crimes with which he was charged.[302] Importantly, Cooper was acquitted of the charge to which the plea agreements related. Given his acquittal on the relevant charge, Cooper clearly was not prejudiced by the admission of codefendants' plea agreements. Further, neither trial counsel, nor appellate counsel failed to meet *Strickland's* objective standard of reasonable representation.[303]

### 5. Speedy Trial

---

[297] *E.g.*, Trial Tr., Feb. 26, 2019, at 103:16–110:5; 120:8–15.
[298] The Court expressed its thoughts at length on the plea agreement issue. *Id.* at 182:13–189:17.
[299] *Id.* at 193:4–195:6.
[300] *Id.* at 195:7–8.
[301] *Id.* at 199:8-201:3.
[302] *Id.* at 200:9-12.
[303] The fact that appellate counsel filed a merits brief on appeal raising more meritorious issues, further insulates them against a claim of performance deficiency.

Cooper claims that his right to a speedy trial was violated under the United States and Delaware constitutions[304] Relying in large part on *Barker v. Wingo*'s[305] four-factor balancing test, Cooper argues that Edinger was ineffective in not filing his March 25, 2018 *pro se* motion alleging violation of his right to a speedy trial[306] and that Brose was similarly ineffective for moving for severance rather than objecting to the superseding indictments.[307] The *Barker v. Wingo* factors are: (1) length of the delay; (2) reason for the delay: (3) whether the defendant asserted his right; and (4) any resulting prejudice.[308] Cooper claims that he "was inherently prejudiced by the fact that he was incarcerated for thirteen months while he waited to confront the evidence against him."[309]

In addition to arguing that this claim is procedurally barred,[310] the State emphasizes that Edinger "was out of the case more than six months before the trial began," and that numerous other facts weigh against finding that Cooper's right to a speedy trial was violated.[311] It notes that the seriousness of the charges, complexity of the case, change in counsel, and the fact that he was tried "within 13

---

[304] Def.'s Am. Mot., at 41, D.I. 135; Def.'s Supp. Br., at 26, D.I. 154.
[305] *Barker v. Wingo*, 407 U.S. 514 (1972).
[306] Def.'s Supp. Br., at 27–28, D.I. 154.
[307] Def.'s Am. Mot., at 42, D.I. 135.
[308] *Barker,* 407 U.S. at 530.
[309] Def.'s Supp. Br., at 28, D.I. 154.
[310] State's Resp., at 25, D.I. 160.
[311] *Id.* at 28, ¶e.

months of his arrest – and several months before earlier indicted codefendants had their trials" all weigh against such a finding.[312]

Cooper was originally indicted on January 16, 2018, and trial took place from February 25–28, 2019. The docket reflects three trial dates – June 19, 2018,[313] October 29, 2018,[314] and February 25, 2029.[315] It appears that the rescheduling of the June 19th trial was caused by a reindictment of "all related and active RICO cases" totaling 40 defendants on June 4th.[316] The Office of Conflicts Counsel moved for Brose's admission *pro hac vice* on August 10, 2018,[317] presumably due to Edinger's office having a conflict in representing Cooper after the reindictment,[318] The October 19th trial date was rescheduled due to Brose having only recently entered his appearance.[319]

The factors the Court considers determining whether a speedy trial violation under *Barker v. Wingo* are: (1) the length of the delay; (2) the reason from the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice

---

[312] *Id.* at 25 (citations omitted).
[313] D.I. 4. D.I. 39 (trial scheduled for February 25, 2019).
[314] D.I. 23.
[315] D.I. 39.
[316] D.I. 17.
[317] D.I. 27.
[318] The record is unclear why there was a substitution of counsel, although it is likely that the Public Defender's Office, where Edinger was employed, learned it had a conflict of interest involving another client due to the reindictment.
[319] D.I. 31.

to the defendant resulting from the delay.[320]  The length of the delay is the trigger

that necessitates the consideration of the other three *Barker* factors. "[U]ntil there

is some delay which is presumptively prejudicial, there is no necessity for

inquiring into the other factors that go into the balance."[321]  No specific length of

delay automatically violates the right to a speedy trial; rather the length is

"dependent on the peculiar circumstances of the case."[322]  The factors are related

and no one factor is conclusive.[323] The Delaware Supreme Court has held that if the

delay between arrest or indictment and trial approaches one year, then the Court

will generally consider the other factors.[324]

The length of the delay was 13 months.  This factor weighs in Cooper's

favor, and so, the Court considers the other factors.

The delay was occasioned by several factors.  The charges were serious.

The case was extremely complex, involving allegations that Cooper was part of an

extensive criminal enterprise.  At one time, the case involved as many as 40

defendants.[325]  There was a change in defense counsel mid-way through the time

---

[320] *Barker,* 407 U.S. at 530.

[321] *Id.*

[322] *Id.* at 530-531.

[323] *Rivera v. State,* 2023 WL 1978878, at *5 (Del. 2023) (citing *Middlebrook v. State,* 802 A.2d 268, 273 (Del. 2002)).

[324] *Id.* (citing *Cooper v. State*, 2011 WL 6039613, at *7 (Del. 2011)).

[325] D.I. 17.

the case was pending, necessitating a defense request to reschedule the October 2018 trial.[326]  The reasons for the delay very strongly disfavor Cooper.

Cooper alleges Edinger and Brose were ineffective in failing to assert his right to a speedy trial.  Therefore, for purposes of this analysis, the Court will treat Cooper as having asserted his right, so that this factor favors Cooper.

Finally, the Court considers prejudice to Cooper. The Court considers prejudice in light of the interests that the right to a speedy trial is designed to protect: "(1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired."[327]  Cooper was incarcerated throughout the pretrial proceedings. While he asserts that he "was under the constant stress and apprehension of having his life forever altered by the possibility of a guilty verdict[,]"[328] that stress and apprehension is more appropriately attributed to the seriousness of the charges and the strength of the State's case, than to any pretrial delay.  Evidence of the fact that Cooper was less concerned about the delay than the charges are his requests to continue the trial by letter dated February 22, 2019,[329] and orally after jury selection, but before the presentation of evidence.[330]  Most importantly in the

---

[326] D.I. 31.
[327] *Rivera,* at *6 (quoting *Weber v. State*, 971 A.2d 135, 162 (Del. 2009)).
[328] Def.'s Supp. Br., at 28, D.I. 154.
[329] D.I. 64.
[330] Trial Tr., Feb. 25, 2019, at 3:23-4:17.

Court's view is the fact that Cooper does not assert that his defense was impaired in any way by the delay. This factor favors the State.

Having considered all of the *Barker v. Wingo* factors, the Court concludes that they weigh against finding a violation of Cooper's right to a speedy trial. Although more than a year passed between his arrest and trial, nearly half of that delay was not attributable to the State, and Cooper failed to show that the delay impaired his defense in any way.

Edinger represented Cooper for less than seven months. At the time he left the case, there had been no violation of Cooper's speedy trial rights. For that reason, Edinger was not ineffective in failing to move to dismiss the indictment based on a violation of Cooper's speedy trial rights. Similarly, Brose had no basis to move to dismiss the indictment based on a violation of Cooper's speedy trial rights. Since there was no violation of Cooper's speedy trial rights, appellate counsel was not ineffective in not raising a speedy trial claim on appeal.

### E. Trial Counsel was not Ineffective in not Calling Kiayre Braxton as a Witness.

Cooper takes issue with Brose's failure to call Braxton to testify "despite his availability to testify and his ability to present clearly exculpatory evidence in favor of the defendant."[331]  After some vacillation between testifying and not

---

[331] Def.'s Supp. Br., at 30, D.I. 154; Braxton Aff., DA 684, D.I. 155.

testifying, Braxton was ultimately willing to testify.[332]  Brose was given permission to speak with him, but "told [Braxton] that he could not help the defendant or the defense" and did not call him to testify.[333]  Cooper claims that Brose's election not to call Braxton to testify constitutes ineffective assistance of counsel.[334]

The State contends that "Cooper attempts to invert the much-scrutinized transcripts and recordings with the confidential informant (both his own and Braxton's) and ignores the photo evidence the investigators preserved from Cooper's Instagram pages (before Cooper deleted the images)" – all to argue that he was somehow entrapped."[335]  It also emphasizes that it was Cooper's decision not to call Braxton[336] and that Braxton's testimony would have been beneficial to the State.[337]

Braxton initially intended to invoke his Fifth Amendment rights,[338] but after speaking with his counsel, he elected to testify.[339]  After speaking with Braxton, Brose informed the Court that "[he] advised Mr. Cooper, in [his] opinion, [he] would not call [Braxton] to testify. It's against [his] advice to have him testify, but

---

[332] *Id.*

[333] *Id.*

[334] *Id.* at 30–31.

[335] State's Resp., at 26–27, D.I. 160.

[336] *Id.* at 27 *citing* Trial Tr., Feb. 27, 2019, at 37:1–16.

[337] State's Resp., D.I. 160 at 27.

[338] Trial Tr. Feb. 27, 2019, D.I. 155, at 2:13–15.

[339] *Id.* at 31:2–21.

Mr. Cooper desires to have [Braxton] testify."[340]   However, as the State noted, Cooper himself ultimately elected not to call Braxton to testify.[341]  "Whether to call a witness, and how to cross-examine those who are called are tactical decisions."[342] A defendant challenging such decisions has the burden of supplying what information "would have been obtained had [counsel] undertaken the desired investigation' and how this information would have changed the result. The defendant must 'substantiate his concrete allegations of actual prejudice or else risk summary dismissal.'"[343]

Here, Brose's ability to conduct a thorough debriefing of Braxton was impaired by the fact that Braxton was  Cooper's codefendant and was represented by counsel.  Braxton did not resolve his case until February 11, 2019 – two weeks before Cooper went to trial.[344]   Further, he did not agree to waive his Fifth Amendment rights until only moments before he would have testified.[345]  Under those circumstances, Brose had no meaningful opportunity to discuss Braxton's testimony with him.  It is apparent that Braxton would have brought considerable baggage with him to the witness stand, having entered guilty pleas to Conspiracy to Commit Racketeering, Drug Dealing (Heroin), and three counts of PFDCF in

---

[340] *Id.* at 35:23–36:4.

[341] State's Resp. at 27, D.I. 160.

[342] *Outten*, 720 A.2d at 557.

[343] *State v. Powell*, 2016 WL 3023740 at 25 (quoting *id.*).

[344] *See, State v. Braxton,* 2021 WL 4462593 (Del. Super. Sep. 29, 2021).

[345] Trial Tr., Feb. 27, 2019, at 31:2-21.

55

the same case in which Cooper was charged.[346]  Importantly, by admitting he was guilty of conspiring to commit racketeering, Braxton admitted to conspiring with Cooper since they were listed as codefendants in that charge.[347] Certainly, that admission would have created a substantial problem for Cooper in avoiding conviction on the conspiracy charge.  Braxton also was the subject of any number of surreptitiously recorded conversations with CS5.[348]  After having had a brief opportunity to speak with Braxton, Brose decided that he would not be helpful, and, in consultation with Cooper, made the entirely reasonable decision  not to call Braxton.  In doing so, Cooper avoided enhancing his risk of being convicted of Conspiracy to Commit Racketeering due to Braxton's admission that he conspired with Cooper to commit that crime, as well as any other risks, known and unknown, Braxton's testimony presented.  Brose's decision to refrain from calling Braxton as a witness clearly was professionally reasonable.  Arguably it would have been calling him as a witness that would have been  professionally unreasonable.

## F. Resubmitted Prior Claims.

The Supplemental Brief filed by current postconviction counsel resubmits all of the claims included in Levin's Amended motion and Cooper's *pro se*

---

[346] *Id.*
[347] Reindictment, Count Two, D.I. 30.
[348] *See, e.g.* State's Resp., at 22-23, D.I. 160.

Motion.[349] Levin attempted to structure his Amended Motion to track as closely as possible Cooper's *pro se* Motion.[350] For that reason, the Court addresses the two motions concurrently.[351] The Supplemental Brief identified, restated, and expanded upon certain of the claims raised in the earlier motions. All of those restated and expanded claims in the Supplemental Brief were resolved above. Finally, Levin's Amended Motion identifies those claims raised by Cooper that Levin considers to be without merit and Levin explains his reasons for those conclusions. The Court has carefully reviewed those "no merit issues" and agrees with Levin that each of them is without merit for the reason Levin offers.

In his Amended Motion, Levin identifies what he considers meritorious ineffective assistance of counsel claims raised by Cooper in his *pro se* Motion relating to Edinger as Edinger failing to bring motions on Cooper's behalf to allow him to proceed *pro se*;[352] to assert a speedy trial violation and to object to the superseding indictment.[353] The Court addressed these claims in Sections V. A. and V. D. 5, respectively.

---

[349] Def.'s Supp. Br., at 32-36, D.I. 152.
[350] Def.'s Am. Mot., at 31, D.I. 135.
[351] The Amended Motion did not address Cooper's claim in his *pro se* Motion that Volturo was ineffective in moving Brose's admission *pro hac vice*. The Court has considered the claim and finds it to be without merit.
[352] *Id.* at 31-33.
[353] *Id.* at 41-42.

Regarding Brose, Levin alleges multiple acts or omissions he deems constitute ineffective assistance of counsel. The Court addresses each in turn.

**1.** Brose was ineffective in failing to challenge the veracity of the affidavits in support of the search warrants and file a *Franks* Motion regarding CS5's false allegations.[354] The Court addressed this claim in Section V. D. 2.

**2.** Brose was ineffective in failing to present an entrapment defense after admitting Cooper's guilt in his opening statement.[355] The Court addressed this claim in Section V. B.

**3.** Brose was ineffective in failing to object to Special Agent Haney's testimony regarding a photograph of a Ruger P85 firearm sent to him by the confidential informant in violation of Cooper's Sixth Amendment confrontation rights.[356] During the search of Unit 8, a Ruger P85 firearm was recovered. Cooper was found guilty of possession this weapon. The Court finds no merit in Cooper's Sixth Amendment claim, inasmuch as the photograph was from Cooper's own Instagram account. More importantly, Cooper has failed to demonstrate prejudice from the admission of the photograph. The firearm itself was located in Unit 8

---

[354] *Id.* at 33-39.

[355] *Id.* at 43-44.

[356] *Id.* at 44-46. Levin writes, "The photos that the informant sent to Agent Haney were never turned over to the defense during discovery. The photos also were not included in the Instagram records recovered from the State's search warrant of Mr. Cooper's Instagram." The Amended Motion only references and raises an issue one regarding photograph, nor does it substantiate the discovery claim.

which was associated with Cooper, and Cooper was convicted of possessing other contraband recovered from that location.

**4.** Brose was ineffective in failing to use police reports to impeach officers and the State's forensic chemist expert witness.[357] Cooper faults Brose for failing to challenge a discrepancy between the weight of the heroin reported by Det. Barnes and the forensic chemist and the chemist's methodology for calculation its weight.[358] Cooper was convicted of possessing with the intent to deliver four grams or more of heroin [359] and aggravated possession of five grams or more of heroin.[360] Those convictions merged for sentencing.[361] Cooper has failed to demonstrate prejudice related to any aspect of the forensic drug analysis. Both the weight described by Det. Barnes and by the forensic chemist are well in excess of five grams.

**5.** Cooper has not produced any evidence on postconviction relief that would undermine either the conclusion that the substance was heroin or that the combined weight exceeded five grams.

**6.** Brose was ineffective in failing to investigate and call witnesses regarding the drugs and firearms seized during the execution of the search warrant

---

[357] *Id.* at 47-48.
[358] *Id.*
[359] Reindictment, Count 4, Drug Dealing Heroin, D.I. 30.
[360] *Id.* Count 5, Aggravated Possession of Heroin.
[361] Sentencing Tr., May 31, 2019, at 20, 33-34.

at the shop I support of Cooper's contention that the drugs and firearms were planted by various law enforcement officers.[362] This claim is conclusory and unsubstantiated, and Cooper fails to identify any witnesses whose testimony would support it.

**7.** Brose was ineffective in failing to file for discovery and inspection.[363] Here, Levin does little more than restate Cooper's claim. There is no support in the record for this allegation that Brose did not request discovery. To the extend Cooper alleges Brose failed to identify the technician who provided Instagram records to the State or the officers who found the contraband, he has failed to demonstrate prejudice.

**8.** Brose was ineffective in failing to object to Instagram photographs and retain and expert.[364] To the extent this claim relates to Special Agent Haney, the Court addressed it in Section V. F. 3. Cooper, through Levin, fails to articulate a basis to object to other Instagram photographs obtained by search warrants. Further, he has failed to articulate any reason to conclude that had Brose retained an expert, that expert would have been helpful.

---

[362] Def.'s Am. Mot. at 49-50, D.I. 135.
[363] *Id.* at 52.
[364] *Id.* Levin notes this claim is redundant.

**9.** Brose was ineffective in failing to object to the Court's decision regarding the confidential informant's identity.[365] The Court addressed this issue in Section V. D. 3.

**10.** Brose was ineffective in failing to move for a new trial.[366] Levin restates Cooper's claim that had Brose moved for a new trial on the grounds that the reindictment prejudiced his case, no officers from the shop testified, and the State's drug expert miscalculated the quantity of heroin, he would have been granted a new trial. The Court has considered these arguments and concludes that it would not have ordered a new trial based on them.

**11.** Brose was ineffective in failing to object to the State's FBI fingerprint expert's report and testimony.[367] Levin offers, "Given the unreliability of latent fingerprint forensic science, Attorney Brose has no justifiable reason for failing to ask a single question on cross-examination."[368] Cooper has failed to demonstrate prejudice. Levin provides no support for his statement regarding the reliability of fingerprint forensic science, nor does he provide any expert opinion to contest the State's trial evidence.

---

[365] *Id.* at 52-54.
[366] *Id.* at 54-55.
[367] *Id.* at 55-56.
[368] *Id.* at 56.

**12.** Brose was ineffective in failing to object to the State's DNA expert's report and testimony.[369] Levin fails to articulate a basis to object to the witness' report, nor does he offer any expert evidence to challenge he conclusions.[370] Accordingly, he has not demonstrated prejudice.

**13.** Brose was ineffective in failing to move to suppress DNA samples collected from Cooper.[371] Neither Cooper, nor either of his postconviction relief counsel provided the Court with the probable cause affidavit in support of the DNA search warrant in order to substantiate their claim that it lacked probable cause. In any event, Cooper concedes in his *pro se* Motion that his DNA was already "in the system" from other cases.[372] Accordingly, he cannot show prejudice.

**14.** Brose was ineffective in failing to request a missing witness instruction for an unidentified confidential informant.[373] The Court finds no basis for a missing witness instruction, and the absence of such an instruction had no bearing on the outcome of the case.

---

[369] *Id.* at 57-59.

[370] Brose obtained a DNA whose results were consistent with the FBI expert's conclusions. *Id.* at 46.

[371] *Id.* at 59-61.

[372] Def.,'s *pro se* Mot., D.I. 120

[373] Def.'s Am. Mot., at 61-62, D.I. 135.

The Court now turns to the claims raised by Cooper in his *pro se* Motion that Levin deems to be without merit.

**15.** Brose was ineffective for failing to file motions to suppress regarding FBI GPS surveillance and wiretap.[374] Levin states that "[t]he wiretap and GPS evidence was legally obtained by the FBI through various subpoenas." The fact that federal agents obtained the evidence is immaterial to the legality of the evidence collection. The Court agrees.

**15.** Brose was ineffective for failing to move for dismissal for lack of jurisdiction and illegal arrest.[375] Levin states that Delaware's state court has jurisdiction. The Court agrees.

**16**. Brose was ineffective in failing to seek a DNA expert regarding the testing of Cooper's DNA swabs.[376] Levin explains that this claim is without merit because Brose retained an expert who confirmed the accuracy of the State's expert's report and testimony.[377] The Court agrees.

**17**. Brose was ineffective for failing to object to a different judge other than the one who presided over the trial handling a note from the jury.[378] Levin states that Cooper suffered no prejudice because the parties agreed to the answer to

---

[374] Amended Mot., at 39., D.I. 135
[375] *Id.* at 40.
[376] *Id.* at 46-47.
[377] *Id.* at 47.
[378] *Id.* at 50-51.

the jury's note which delt with a count on which Cooper was acquitted.[379] The Court agrees.

18. Brose was ineffective for stipulating to Cooper's prior record.[380] Cooper alleges that his prior convictions are for trafficking in heroin, possession with the intent to deliver, and maintaining a vehicle for the possession of controlled substances are "'no longer in the Delaware law books since 2011.'"[381] Brose discussed the stipulation with Cooper, which Cooper signed.[382] Levin states that the fact that some offenses are no longer in the books does not alter Cooper's prohibited status.[383] The Court agrees.

19. Brose failed to move to sequester two State's witnesses who were allowed to sit a counsel table.[384] The witnesses we chief investigating officers. Levin explains that sequestration of witnesses is within the Court's discretion and chief investigation officers are not excluded.[385] The Court agrees.

20. Brose failed to object to Count One of the verdict sheet and to move for a mistrial because Count One did not bear on Cooper's guilt or innocence.[386] Levin states that Cooper was charged with this offense and the verdict forms

[379] *Id.*
[380] *Id.* at 51.
[381] *Id.*
[382] Trial Tr., Feb. 21, 2019, at 49:7–19.
[383] Def.'s Am. Mot, at 51, D.I. 135.
[384] *Id.* at 56.
[385] *Id.*
[386] *Id.* at 57.

properly present all necessary elements to convict. At the same time, there is no prejudice because Cooper was found not guilty of this charge.[387] The Court agrees.

### G. Prosecutorial Misconduct.

**1.** Cooper alleges that the State withheld Instagram communications between himself and the confidential informant.[388] This issue was litigated at trial by Brose.[389] Thus, it is barred as previously litigated.[390]

**2.** Cooper alleges that the State interfered with a witness, Kiayre Braxton.[391] Levin states that there is no evidence that the State interfered with Braxton's testimony.[392] The Court agrees. In fact, it was Cooper who declined to call Braxton as a witness, despite Braxton being willing to testify.[393]

**3.** Cooper alleges that the State presented tainted evidence to the jury.[394] Cooper claims that the State committed prosecutorial misconduct when Det. Barnes broke the evidence seals on evidence boxes to put locks on the guns inside them.[395] This issues is barred as procedurally defaulted.[396] Even if viewed as an ineffective assistance of counsel claim for failing to raise the issue, it fails both

---

[387] *Id.*

[388] *Id.* at 63.

[389] Trial Tr., February 25, 2019, at 3:21-37:9.

[390] Super. Ct. Crim. R. 61(i)(4).

[391] Def.'s AM. Br., at 64, D.I. 135.

[392] *Id.* at 63-64.

[393] *See* Section V E.

[394] Def.'s Am. Mot, at 65-66, D.I. 135.

[395] *Id.*

[396] Super. Ct Crim R. 61(i)(3).

*Strickland* prongs. There is no evidence Det. Barnes did anything wrong or that Cooper was prejudiced by his actions.

**4.** Cooper alleges that the State lied to the jury regarding when he was indicted.[397] Cooper claims Special Agent Haney incorrectly told the jury that he was indicted in February when he was actually reindicted in June 2018.[398] Levin explains that this issue has no merit because it was addressed by Brose on cross examination.[399] Not only does the Court agree, but this issue is barred as previously litigated.[400]

**5.** Cooper alleges that the State dropped the money laundering charge against him but continued to comment on it during closing arguments.[401] Levin deems this issue to have no merit, because any comments the State made in reference to money laundering were limited to establishing a predicate act for the criminal enterprise in connection with the Conspiracy to Commit Racketeering charge.[402] Not only does the Court agree, but this issue is procedurally defaulted.[403] Even if viewed as an ineffective assistance of counsel claim for failing to raise the issue, it fails both *Strickland* prongs. The State's comments

---

[397] Def.'s Am. Mot. at 66-67, D.I. 135.
[398] *Id.*
[399] *Id.*
[400] Super. Ct. Crim. R. 61(i)(4).
[401] Def.'s Am. Mot, at 67, D.I. 135.
[402] *Id.*
[403] Super. Ct. Crim. R. 61(i)(3).

were proper, and even if they were not, Cooper was not prejudiced because he was acquitted of the Conspiracy to Commit Racketeering charge.

**6.** Cooper alleges that the State improperly sent his discovery materials to other attorneys and codefendants.[404] Levin deems this issue to have no merit, because, while the State sent discovery materials to a codefendant's attorney related to the codefendant's case, there is no evidence that any of those materials related to Cooper.[405] Not only does the Court agree with Levin, but this issue is procedurally defaulted.[406] Even if viewed as an ineffective assistance of counsel claim for failing to raise the issue, if fails both *Strickland* prongs. There is no evidence that the State committed misconduct or that Cooper was prejudiced.

**7.** Cooper alleges that the State acted vindictively by ceasing to prosecute five of his codefendants who were subsequently tried in federal court while continuing to prosecute him in State court.[407] Levin deems this issue to have no merit because the is no legal basis to support it.[408] Not only does the Court agree with Levin, but this issue is procedurally defaulted.[409] Even if viewed as an ineffective assistance of counsel claim for failing to raise the issue, it fails both *Strickland* prongs. It is legally without support.

---

[404] Def.'s Am. Mot. at 67, D.I. 135.
[405] *Id.*
[406] Super. Crim. R. 61(i)(3).
[407] Def.'s Am. Mot, at 67-69, D.I. 135.
[408] *Id.* at 69.
[409] Super. Ct. Crim. R. 61(i)(3).

67

## H. The Court Abused its Discretion.

**1.** Cooper alleges that the Court abused its discretion when it violated his Fifth Amendment right to remain silent by ruling that he had to testify in order to reveal the identity of the confidential informant.[410] The Court addressed this issue in Section V. D. 3.

**2.** Cooper alleges that the Court abused its discretion when it accepted a stipulation concerning his prior record without conducting a colloquy with him.[411] The Court substantially address this issue in Section V. F. 18. Further, there is no statutory or case law requiring such a colloquy.

**3.** Cooper alleges that the Court abused its discretion in allowing his codefendants' guilty pleas to be admitted in evidence.[412] The Court addressed this issue in Section V. D. 4.

**4.** Cooper alleges that the Court abused its discretion and violated his due process rights when it made a comment during Det. Barnes' testimony.[413] Mr. Levin deems this issue to have no merit because the Court's comment protected Cooper's due process rights rather than infringed on them.[414] Not only does the Court agree with Levin, but the Court addressed this issue in more detail when it

---

[410] Def.'s Am. Mot, at 69-70, D.I. 135.
[411] *Id.* at 70-71.
[412] *Id.* at 71-73.
[413] *Id.* at 73-75.
[414] *Id.* at 75.

denied Cooper's Motion for Recusal on November 30, 2020.[415]  Further, this issue

is procedurally defaulted.[416]  Even if viewed as an ineffective assistance of counsel

claim for failing to raise the issue, it fails both *Strickland* prongs.  Cooper simply

inverts the purpose of the Court's comment.

**5.**  Cooper alleges that another judge improperly ruled on a jury note.[417]  The

Court addressed this issue in Section V. F. 17.

**6.**  Cooper alleges that Brose was improperly admitted *pro hac vice* without

his permission.  Levin deems this issue to be without merit because there was no

impropriety in Brose's admission, the issue was discussed with Cooper directly,

and Cooper's acquiescence is not required.[418]  Not only does the Court agree with

Levin, but this issue is barred because it was litigated directly with Cooper.[419]

Even if viewed as an ineffective assistance of counsel claim for failure to raise the

issue, it fails both *Strickland* prongs because there is no legal basis to support it.

---

[415] D.I. 118.

[416] Super. Ct. Crim. R. 61(i)(3).

[417] Def.'s Am. Mot., at 75, D.I. 135.

[418] *Id.* at 75-76.

[419] Super. Ct. Crim. R. 61(i)(4).

## V.  CONCLUSION

For the foregoing reasons, Defendant Maurice Cooper's Motion for Postconviction Relief is **DENIED**.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.